## STATE vs. ANTON BANTLEY.

If one person intentionally inflicts upon another a wound calculated to destroy life, and death ensues therefrom within a year and a day, the offence is murder or manslaughter, as the case may be; and he is none the less responsible for the result although it may appear that the deceased might have recovered if he had taken proper care of himself, or that unskillful or improper treatment aggravated the wound and contributed to his death.

A charge of the court, claimed to be erroneous, is to be considered, not in the abstract, but with reference to the actual facts of the case.

INFORMATION for manslaughter; brought to the Superior Court in Hartford County, and tried to the jury, on the plea of not guilty, before *Hitchcock*, *J.* Verdict guilty, and motion for a new trial for error in the charge of the court. The case is fully stated in the opinion.

*G. G. Sill* and *T. E. Steele*, in support of the motion.

*W. Hamersley*, State's Attorney, contra.

PARDEE, J. On the night of June 11th, 1876, the accused inflicted a severe gun-shot wound upon the arm of one March, between the elbow and shoulder. March died eleven days thereafter of lock-jaw. The prosecution claimed that death resulted from the wound; the accused claimed that it resulted from the treatment of the case by the attending physicians. The wound was dressed in the first instance by one surgeon, afterwards to the time of death by another; these differed radically as to the manner in which the case should have been treated.

The counsel for the accused claimed, and asked the court to charge the jury, that if they should find that the death of March was the result or consequence of willful mismanagement or gross carelessness on the part of the attending surgeons, they could not find the accused guilty of manslaughter, as charged in the information. The court charged the jury, that unless they should find that March died from a wound inflicted on him by the accused, as charged in the information,

they could not convict him of manslaughter; but that if they should find that the accused willfully, and without justifiable cause, inflicted on March a dangerous wound, from which death would be likely to ensue, and if they should find also that his death did in fact ensue from and was caused by the wound, and not from any other cause, carelessness and mismanagement of whatever character on the part of the attending surgeons would be immaterial, and the treatment of the case by them, whatever it may have been, could not avail the accused as a defense.   The jury having returned a verdict of guilty, the accused moved for a new trial for error in the charge.

As to the law applicable to this case, Roscoe says: "The law on this point is laid down at some length by Lord Hale. If, he says, a man give another a stroke, which, it may be, is not in itself so mortal but that with good care he might be cured, yet if he dies within the year and day, it is a homicide or murder as the case is, and so it has been always ruled. But if the wound be not mortal, but with ill application by the party or those about him of unwholesome salves or medicines the party dies, if it clearly appears that the medicine and not the wound was the cause of the death, it seems it is not homicide; but then it must clearly and certainly appear to be so.   But if a man receive a wound which is not in itself mortal, but for want of helpful applications or neglect it turn to a gangrene or a fever, and the gangrene or fever be the immediate cause of the death, yet this is murder or manslaughter in him that gave the stroke or wound; for that wound, though it was not the immediate cause of the death, yet if it were the mediate cause, and the fever or gangrene the immediate cause, the wound was the cause of the gangrene or fever, and so consequently *causa causans*." Roscoe's Criminal Evidence, 7th ed., 717; 1 Hale P. C., 428.   In *Rex* v. *Rews*, Kelynge, 26, it was holden that neglect or disorder in the person who receives the wound will not excuse the person who gave it; that if one gives wounds to another who neglects the care of them and is disorderly, and does not keep that rule which a wounded person should do, if he die it is

murder or manslaughter according to the circumstances of the case, because if the wounds had not been given the man had not died. In *Regina* v. *Holland*, 2 Mood. & Rob., 351, the deceased had been severely cut with an iron instrument across one of his fingers, and had refused to have it amputated; at the end of a fortnight lock-jaw came on and the finger was then amputated, but too late, and the lock-jaw ultimately caused death. The surgeon expressed the opinion that early amputation would probably have saved his life. MAULE, J., held that a party inflicting a wound which ultimately becomes the cause of death is guilty of murder, though life might have been preserved if the deceased had not refused to submit to a surgical operation. In *Commonwealth* v. *Pike*, 3 Cush., 181, it was held that where a surgical operation is performed in a proper manner and under circumstances which render it necessary in the opinion of competent surgeons, upon one who has received a wound apparently mortal, and such operation is ineffectual to afford relief and save the life of the patient, or is itself the immediate cause of the death, the party inflicting the wound will nevertheless be responsible for the consequences. Greenleaf says (Greenleaf's Ev., 3d Vol., sec. 139, 5th ed.,) "If death ensues from a wound given in malice, but not in its nature mortal, but which being neglected or mismanaged the party died, this will not excuse the prisoner who gave it; but he will be held guilty of the murder unless he can make it clearly and certainly appear that the maltreatment of the wound or the medicines administered to the patient or his own misconduct, and not the wound itself, was the sole cause of his death, for if the wound had not been given the party had not died." In *Rex* v. *Johnson*, 1 Lewin C. C., 164, the deceased died from a blow received in a fight with the prisoner; a surgeon expressed an opinion that a blow on the stomach, in the state in which the deceased was, arising from passion and intoxication, was calculated to occasion death, but not so if the party had been sober. HALLOCK, B., directed an acquittal, observing that where the death was occasioned partly by a blow and partly by a predisposing circumstance, it was impossible to apportion the operation of the

several causes and to say with certainty that the death was immediately occasioned by any one of them in particular. Of this case Roscoe remarks that it may be doubted how far this ruling of the learned judge was correct. Roscoe's Crim. Ev., 7th ed., 718. In *Rex* v. *Martin*, 5 Car. & P., 130, where the deceased, at the time when the blow was given, was in an infirm state of health, PARKE, J., said to the jury: "It is said that the deceased was in a bad state of health, but that is perfectly immaterial, as, if the prisoner was so unfortunate as to accelerate her death, he must answer for it." In *Commonwealth* v. *Hackett*, 2 Allen, 136, it was held that one who has wilfully inflicted upon another a dangerous wound, with a deadly weapon, from which death ensued, is guilty of murder or manslaughter as the evidence may prove, although through want of due care or skill, the improper treatment of the wound by surgeons may have contributed to the death.

Upon these authorities we may state the rule as follows: If one person inflicts upon another a dangerous wound, one that is calculated to endanger and destroy life, and death ensues therefrom within a year and a day, it is sufficient proof of the offence either of manslaughter or murder as the case may be; and he is none the less responsible for the result although it may appear that the deceased might have recovered if he had taken proper care of himself, or that unskillful or improper treatment aggravated the wound and contributed to his death.

There is no such defect in the law as that the person who intentionally inflicts a wound calculated to destroy life, and from which death ensues, can throw responsibility for the act upon either the carelessness or the ignorance of his victim; or shield himself behind the doubt which disagreeing doctors may raise as to the treatment proper for the case.

Indeed counsel for the defendant do not really deny the force of the rule. Their complaint is rather in the nature of a verbal criticism of the charge. The judge said to the jury that if the death of March resulted from the wound and from no other cause, carelessness and mismanagement of whatever character on the part of the attending surgeons would be

immaterial. It is to be presumed in favor of a charge that it refers to matters concerning which witnesses have testified and to points concerning which counsel have presented arguments; and it is not to be presumed that it includes within its scope all possibilities. From this record we cannot perceive that any witness suggested even that the attending surgeons caused the death of March by an intentional misapplication or withholding of remedies, or that counsel in argument intimated any such thing. The motion states that the two doctors differed radically regarding the treatment proper for the case; the claim of each as to the other was that he had erred through ignorance, not by criminal intention; and when the judge used the expression complained of in this case, we are to presume that he referred, and that the jury understood him to refer, to that kind of mismanagement alone of which witnesses had testified and concerning which counsel had argued in their hearing. With this limitation the defendant has no occasion for complaint.

A new trial is not advised.

In this opinion the other judges concurred.