**CITY OF HEATH, Texas, Appellant,**

v.

**Gilbert L. KING, et al., Appellee.**

**No. 05–82–01162–CV.**

Court of Appeals of Texas,
Dallas.

Nov. 28, 1983.

Rehearing Denied Jan. 4, 1984.

Robert L. Dillard, III, Robert E. Hager, W.S. Barron, Jr., Bob F. Young, Dallas, for appellant.

Robert K. Ramsey, Terrell, Harold F. Curtis, Greenville, for appellee.

Before STEPHENS, GUILLOT and ROWE, JJ.

ROWE, Justice.

The City of Heath, in Rockwall County, appeals from a judgment disannexing five tracts of land. After the governing body of the city failed to act on a properly presented petition to disannex, several voters who signed the petition sought to compel disannexation pursuant to TEX.REV. CIV.STAT.ANN. article 970a § 10 by bringing suit in the district court of Rockwall County.[1] After a jury finding that the city failed to furnish services to the five areas in question comparable to services furnished other areas of the city with similar characteristics of topography, patterns of land utilization, and population density, the court granted the relief sought. By two points of error the city seeks to nullify the disannexation. We overrule these points and affirm.

The first point of error assigned by the city questions the jurisdiction of the trial court. The five tracts of land in dispute were annexed seriatim between February 1965, and December 1970. The relief granted plaintiffs admittedly is predicated upon section 10(A) of article 970a as it was originally enacted in 1963 and as it appeared before those amendments which were made to Section 10 by the 67th Legislature in 1981 and which were in effect when suit was filed. Because the earlier provisions, upon which the jury finding is predicated, were omitted when the present statute was enacted in 1981, the city contends that plaintiff's remedy under section 10(A) has been repealed. *Texas Farm Bureau Cotton Association v. Lennox,* 296 S.W. 325, 327 (Tex.Civ.App.—Texarkana 1927, no writ). For reasons stated below, we disagree and hold that, as to lands annexed after the 1963 amendment and before the 1981 amendment, the original Section 10(A) is still applicable and that the trial court had jurisdiction to order disan-

nexation when compliance with these provisions was established.

The caption of House Bill No. 1952 from which the amendment to Section 10(A) is derived reads as follows: "An act relating to annexation of, providing services to, and disannexation of certain areas." The language used in this caption fails to reflect in any way that the subject matter of the act which it accompanies is designed (1) to effect a major change in the substantive law by divesting the rights of disannexation for all city areas annexed after the 1963 amendment and before the 1981 amendment, and (2) to repeal a substantial part of a current statute by omitting from the text of the amendment all reference to certain provisions in the existing statute. Failures in a caption to make designations respecting each of these matters have been held to be sufficient to invalidate other legislation because of Article III, Section 35, of the Texas Constitution, which provides:

Section 35. Subjects and titles of bills. Section 35. No bill (except general appropriation bills, which may embrace the various subjects and accounts, for an on account of which monies are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be expressed.

*Compare Stauffer v. City of San Antonio,* 162 Tex. 13, 344 S.W.2d 158 (1961); *Oakley v. Kent,* 181 S.W.2d 919 (Tex.Civ.App.— Eastland 1944, no writ) (Statutes held invalid due to captions' failure to give notice that they effect a change in existing substantive law). *Compare Globe Indemnity Co. v. Barnes,* 280 S.W. 275 (Tex.Civ.App. —Amarillo 1926, no writ) (statutes held invalid due to caption's failure to give notice

---

1. The trial pleadings do not specify whether the plaintiffs rely upon the 1963 disannexation statute, contained as § 10 of the Municipal Annexation Act, Ch. 160, art. I, 1963 TEX.GEN.LAWS p. 447, or upon the 1981 amendment to § 10. The trial court, however, clearly submitted the appli-

cable special issue pursuant to the 1963 statute. Having failed to object to the court's charge on this basis, the City of Heath urges for the first time on appeal that application of the old statute constituted fundamental error.

that it repeals a body of current law by omitting it from the law as amended).

■ In this case the lack of the caption's reference to the service plan newly promulgated as a prerequisite to city annexation procedures is especially significant because the city contends that disannexation can now be obtained only when some non-compliance with promises made in such a service plan is demonstrated. To adopt the city's contention would create a virtual hiatus of disannexation benefits for all city lands annexed after the 1963 amendment and before the 1981 amendment. Considerations of equity preclude us from ascribing to this statute a legislative intent that its provisions be applied in a retrospective fashion with such unjust results. Instead, we glean from the caption a legislative intent to avoid any problem with Section 35 of the Constitution by making the new disannexation provision applicable only prospectively to such areas as are annexed "from and after the effective date" of the Act. *See* present Section 10(F), first sentence. *See also, City of Fort Worth v. Taylor,* 427 S.W.2d 316 (Tex.1968) (giving the old disannexation provision of Section 10(A) only prospective effect because of statutory language making it applicable "from and after the effective date" of the Act). Recognition of the primary legislative purpose behind new Section 10F, which the statutory language manifests as being merely the tightening of standards under which additional city areas are annexed, further supports this interpretation.

■ For the above reason, we are persuaded that the first sentence of new Section 10(F) is to be given the effect of a savings clause in relation to old Section 10(A). When such is done, two significant results are obtained. First, the repealer principle discussed in *Mendoza v. State,* 460 S.W.2d 145 (Tex.Cr.App.1970), is avoided. A general provision of this kind, when given the effect of a savings clause in a repealing statute, saves something that would otherwise be lost. *Bass v. Allbright,* 59 S.W.2d 891, 894 (Tex.Civ.App. Texarkana 1933, writ ref'd). As to existing rights, a savings clause continues in force the repealed law. *Dade County v. Wiseheart,* 198 So.2d 94, 97 (Fla. 3d Dist.Ct.App.1967). Second, by leaving intact the 1963 disannexation standard for areas annexed before the 1981 amendment, any deficiency in the caption is avoided and the legislation passes constitutional muster. This result is validated under the principle that wherever possible a statute is to be interpreted so as to render it constitutional. *Robinson v. Hill,* 507 S.W.2d 521 (Tex.1974).

■ Having found jurisdiction in the trial court to grant the relief sought, we now address the city's second point of error, which complains of the legal and factual insufficiency of the evidence to support the judgment. The fact issue in dispute is whether the city failed to provide to the disannexed areas services substantially equivalent to those furnished other areas with similar characteristics. Determination of this fact issue involves two considerations: (1) are there two separate areas of the city with similar characteristics; and if so, (2) are services being furnished to one area disparate from those being furnished to the other? In reaching a decision in answer to this sufficiency of evidence point, we must review the record under the tests sanctioned in *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

■ Almost without dispute is the fact that all the land to be disannexed was gently rolling, unimproved farmland with a low population density. Several of the principal landowners in this area testified that other areas of the city had similar topography, patterns of land utilization, and population density. Their testimony was supported by a large, aerial photograph of the entire city which alone demonstrates much about the similarity of the topography, land use, and population density of the two areas under comparison. The city is located on the shores of Lake Ray Hubbard, and only a small strip from 500 to 1,000 feet deep at the water's edge is improved and populated. Two major farm-to-market roads, totally maintained by the

State, course through the city at some distance from the populated areas. Two major city thoroughfares, Hubbard Drive and Terry Lane, cutting through unimproved farm lands, connect these State roads with the developed lakefront subdivisions. Smaller artery roads, such as Crisp Drive and Myers Road, thread the unimproved areas off these two city thoroughfares in the direction of the lakefront. In the opposite direction other city roads give access to the disannexed area, which comprises almost half of the city's crescent-like outer shell. We conclude from the testimony that plaintiffs sufficiently established for purposes of comparison that the area comprised of unimproved farm land on either side of Hubbard Drive and Terry Lane and the area to be disannexed along the city's outer shell meet the statutory requirements of similarity.

 Although the nature of city services furnished to these comparable areas is less clearly established, we likewise find the testimony in this regard legally and factually sufficient to support the jury finding that such services were *not* substantially equivalent. We reach this conclusion despite our lack of consideration of most of the evidence concerning Hubbard Drive and Terry Road relied upon by plaintiffs. We agree with the city that proof of an inordinate maintenance expenditure for Hubbard Drive and Terry Road does not support plaintiffs' contention of dissimilar street and road maintenance in the disannexed area. No comparable thoroughfares serve or are appropriate to serve the disannexed area. These are feeder type roads that connect major State highways with the most densely populated areas of the city, albeit they traverse sections of that area selected for comparison. Neither the provisions of old Section 10(A) nor the provisions of new Section 10(F) contemplate general street or road maintenance at the highest level maintained for any street or road. Apples cannot be compared with oranges, not even for statutory purposes. Nonetheless, the testimony which shows that smaller artery roads such as Crisp Drive and Myers Road received city maintenance

while almost no roads (except Rabbit Ridge) in the disannexed area ever were maintained at city expense does support the plaintiffs' case. To a lesser extent so does the showing of a disparity in the police protection and the mowing of rights-of-way afforded the two areas. The city's second point of error is overruled.

Affirmed.