ARMANDO VALERIANO *v.* GEORGE D.
BRONSON, WARDEN
(13274)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued April 12—decision released September 6, 1988

*Patrice S. Noah,* special public defender, for the appellant (petitioner).

*Steven M. Sellers,* assistant state's attorney, for the appellee (respondent).

ARTHUR H. HEALEY, J. The petitioner, Armando Valeriano, sought a writ of habeas corpus, claiming that he had been denied the effective assistance of appellate counsel in his appeal from his conviction of the crime of felony murder. The trial court, *O'Neill, J.,* denied the petition and the Appellate Court affirmed that decision. *Valeriano* v. *Bronson,* 12 Conn. App. 385, 530 A.2d 1100 (1987). We affirm.

The petitioner was convicted of felony murder in violation of General Statutes (Rev. to 1977) § 53a-54c[1]

---

[1] General Statutes (Rev. to 1977) § 53a-54c provides: "FELONY MURDER. A person is guilty of murder when acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping,

after a jury trial. The jury could reasonably have found that a fire had been started by the petitioner on January 14, 1977, resulting in the death of a victim on April 27, 1978. The petitioner filed an appeal to this court, which affirmed the conviction.[2] *State* v. *Valeriano*, 191 Conn. 659, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984). In his subsequent Superior Court habeas corpus petition, the petitioner claimed that he did not receive the effective assistance of appellate counsel because his appellate counsel did not raise the common law "year and a day" rule on his direct appeal. That rule bars a conviction for homicide if the victim does not die within one year and one day of the conduct that caused the death.[3]

arson, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] The petitioner raised three claims of error in his direct appeal. The claims were that the trial court erred (1) in its instruction on the phrase, "in furtherance of such crime," in the felony murder statute, (2) in refusing to submit to the jury an affirmative defense available under the felony murder statute, and (3) in denying the defendant's motion to exclude a witness as incompetent, in permitting that witness to invoke the privilege against self-incrimination, and in refusing to strike his testimony. *State* v. *Valeriano*, 191 Conn. 659, 661, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984).

[3] The "year and a day" rule can be traced to the Statute of Gloucester, 1278, 6 Edw. 1, c. 9 (repealed). "The reason assigned for that rule was that if the person alleged to have been murdered 'die after that time, it cannot

The habeas court opined that the "only real issue is whether or not the fact that the victim died more than one year and one day after the crime prohibits a conviction for felony murder under General Statutes § 53a-54c." After an extensive analysis of the year and a day rule and the history of the Connecticut law of murder, the habeas court concluded that "[t]he 'year and a day' rule if it ever did exist here, has not evolved, it has atrophied. Appellate Counsel was correct, not ineffective." The petitioner appealed to the Appellate Court, which affirmed the denial of the petition. This court then granted certification limited to two related issues concerning the standard under which a habeas corpus petitioner may raise an issue that his attorney did not pursue on direct appeal.[4]

Before we set out the appropriate procedure to resolve the issues raised by the petitioner, it is useful to review the analysis of the Appellate Court. It framed the issue on appeal as follows: "[W]hether the traditional 'deliberate bypass' standard should be applied to a habeas corpus petition when the failure to raise a particular issue on direct appeal resulted from a deliberate decision on the part of the petitioner's appellate counsel." *Valeriano* v. *Bronson,* supra, 386. The Appellate Court then stated this court's general rule that although habeas corpus cannot be used as an alternative to a

be discerned, as the law presumes, whether he died of the stroke or poison, etc., or a natural death; and in case of life, rule of law ought to be certain.' " *Louisville, E. & St. Louis R. Co.* v. *Clarke,* 152 U.S. 230, 239, 14 S. Ct. 579, 38 L. Ed. 422 (1894), quoting 3 E. Coke, Institutes (2d Ed. 1648) p. 53.

[4] This court granted certification on the following issues: "(1) Did the Appellate Court err in applying the federal 'cause and prejudice' standard in a state habeas corpus proceeding where the petitioner seeks to raise a non-frivolous issue that his attorney did not pursue on appeal although it had been raised in the trial court?

"(2) Where a petitioner has not deliberately bypassed the opportunity to raise a non-frivolous issue on appeal, may he be denied an opportunity to raise that issue in a post-conviction habeas corpus proceeding?"

direct appeal; see, e.g., *Cajigas* v. *Warden,* 179 Conn. 78, 81, 425 A.2d 571 (1979); *Blue* v. *Robinson,* 173 Conn. 360, 369, 377 A.2d 1108 (1977); " 'a petitioner may collaterally raise federal constitutional claims in a habeas corpus proceeding even though he has failed to appeal his federal constitutional claims directly to [the court] *if he alleges and proves, by a fair preponderance of the evidence, facts which will establish that he did not deliberately bypass the orderly procedure of a direct appeal.'* (Emphasis added.) *Vena* v. *Warden,* [154 Conn. 363, 366–67, 225 A.2d 802 (1966)]." *Valeriano* v. *Bronson,* supra, 387.

The deliberate bypass standard,[5] gleaned from the rationale of *Fay* v. *Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), has been followed by this court since *Vena* v. *Warden,* supra. The deliberate bypass standard serves two important functions: (1) it prevents piecemeal litigation; and (2) it prevents a prisoner from deliberately deferring his claims until a time when a new trial, if required, would be impossible. See *Paulsen* v. *Manson,* 193 Conn. 333, 337–38, 476 A.2d 1057 (1984); *D'Amico* v. *Manson,* 193 Conn. 144, 146–47, 476 A.2d 543 (1984). The standard by which to evaluate whether a petitioner has deliberately bypassed a direct appeal is whether the record affirmatively discloses that the petitioner's decision to waive his right to appeal was made voluntarily, knowingly and intelligently. *D'Amico* v. *Manson,* supra, 148. This court has held that a petitioner has not bypassed his right to appeal in a variety of circumstances. See, e.g., *Payne* v. *Robinson,*

---

[5] The deliberate bypass rule is a "prudential limitation on the right to raise constitutional claims in collateral proceedings." *Payne* v. *Robinson,* 207 Conn. 565, 569 n.1, 541 A.2d 504 (1988); see *Vena* v. *Warden,* 154 Conn. 363, 366–67, 225 A.2d 802 (1966); see also *Fay* v. *Noia,* 372 U.S. 391, 438, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963). This court had previously described the rule as jurisdictional. See, e.g., *Galland* v. *Bronson,* 204 Conn. 333, 336, 527 A.2d 1192 (1987); *Cajigas* v. *Warden,* 179 Conn. 78, 81, 425 A.2d 571 (1979).

207 Conn. 565, 569, 541 A.2d 504 (1988) (petitioner's attorney never filed appeal); *Paulsen* v. *Manson,* supra, 341 (petitioner impermissibly denied right to counsel on appeal); *D'Amico* v. *Manson,* supra, 149 (petitioner who pleaded guilty unaware of right to appeal after guilty plea); *Turcio* v. *Manson,* 186 Conn. 1, 4, 439 A.2d 437 (1982) (decision in *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 [1979], released five months after oral argument of petitioner on direct appeal).

The Appellate Court recognized that the United States Supreme Court has subsequently developed the more restrictive standard of "cause" and "prejudice" for access to federal habeas corpus relief by a state prisoner who has defaulted on a state procedural ground. See *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). In *Sykes,* the court held that a state prisoner could not bring federal constitutional claims to a federal habeas court without a showing of "cause" for his state procedural default and actual "prejudice." Id., 87. The cause and prejudice test applies to defaults on appeals as well as to those at trial. *Murray* v. *Carrier,* 477 U.S. 478, 491, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). This restrictive rule is somewhat ameliorated by a general exception that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of showing of cause for the procedural default." Id., 496.

This court has acknowledged the existence of the cause and prejudice test announced in *Wainwright* v. *Sykes,* supra; see *State* v. *Davis,* 199 Conn. 88, 95 n.4, 506 A.2d 86 (1986); *Paulsen* v. *Manson,* supra, 338 n.5; *D'Amico* v. *Manson,* supra, 148; and it has also recognized that it is more restrictive than the "deliberate bypass" test that has been adopted by this court.

*D'Amico* v. *Manson,* supra, 147–48. Although the cause and prejudice test is mandated for federal courts and has also received acceptance by state courts, this court has continued to apply the deliberate bypass test of " 'an intentional relinquishment or abandonment of a known right or privilege.' " Id., 148; see *Payne* v. *Robinson,* supra, 568.

The Appellate Court in *Valeriano* v. *Bronson,* supra, 389, distinguished the use of the deliberate bypass standard as applying to only those cases where the defendant failed to bring an appeal at all; see, e.g., *Paulsen* v. *Manson,* supra; or appeared pro se. See, e.g., *Galland* v. *Bronson,* 204 Conn. 330, 527 A.2d 1192 (1987); but see *Turcio* v. *Manson,* supra (failure to raise claim of invalid jury instruction on appeal assessed by deliberate bypass test).[6] Referring to *Jones* v. *Barnes,* 463 U.S. 745, 749, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983), the Appellate Court concluded that since the determination of what issues to present or not to present on an appeal is committed to the expertise of appellate counsel, "it simply does not make sense to ask whether a habeas corpus petitioner personally and deliberately bypassed the appellate process as to a tactical decision which was never his to begin with." *Valeriano* v. *Bronson,* supra, 390. It then concluded that the cause and prejudice test of *Wainwright* v. *Sykes* applies to the strategic or tactical determination of whether to include a particular issue on appeal.

Recognizing that ineffective assistance of appellate counsel can be grounds for "cause" in the federal

---

[6] The Appellate Court distinguished *Turcio* v. *Manson,* 186 Conn. 1., 439 A.2d 437 (1982), as a case that predated *Murray* v. *Carrier,* 477 U.S. 478, 491, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), where the United States Supreme Court extended the "cause" and "prejudice" test to tactical decisions made on appeal. *Valeriano* v. *Bronson,* 12 Conn. App. 385, 392 n.3, 530 A.2d 1100 (1987).

courts, the Appellate Court assessed appellate counsel's performance by the test of *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Valeriano* v. *Bronson,* supra, 393; see *Levine* v. *Manson,* 195 Conn. 636, 639–40, 490 A.2d 82 (1985); *Williams* v. *Manson,* 195 Conn. 561, 564, 489 A.2d 377 (1985). That test consists of two parts: first, it must be shown that the attorney's performance was so deficient that it fell below the standard of reasonably effective assistance; and, second, those errors deprived the defendant of a fair appeal and caused an unreliable conviction to stand. *Strickland* v. *Washington,* supra, 687. The Appellate Court indicated that appellate counsel carefully considered the "year and a day" rule and concluded that it was a weak argument on appeal. *Valeriano* v. *Bronson,* supra, 394. It also concluded that Connecticut had "never expressly adopted or applied the rule" and that the habeas court accurately questioned whether the policy arguments that underlie the rule were still valid in a modern era of medical science. The Appellate Court concluded that the record did not support a claim of ineffective assistance of counsel and that the petitioner had failed to demonstrate cause. It did not have to reach the issue of prejudice since a petitioner must satisfy both parts of the test to justify review of his claim by a habeas court. It also concluded that there had been no fundamental miscarriage of justice that would permit a suspension of the cause and prejudice test. Id., 394–95.

The petitioner claims that the Appellate Court erred in: (1) applying the federal cause and prejudice standard to a state habeas corpus proceeding; (2) denying the writ of habeas corpus inasmuch as the year and a day rule was still in effect; and (3) preventing the petitioner from obtaining review of a nonfrivolous issue on appeal. We affirm the decision of the Appellate Court.

I

This court must decide the threshold issue of which standard is appropriate for a petitioner to obtain review of a claim of ineffective assistance of appellate counsel: deliberate bypass or cause and prejudice. We conclude that the cause and prejudice test is unnecessary when a habeas court is faced with a claim formulated within the narrow confines of ineffective assistance of appellate counsel.[7]

Although the cause and prejudice test is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertance or ignorance, a claim of ineffective assistance of counsel, by definition, involves incompetence under sixth amendment standards. The United States Supreme Court, while endorsing the more restrictive cause and prejudice test, has concluded that, although ignorance or inadvertance is not cause, ineffective assistance of counsel is a legitimate ground for cause. *Murray* v. *Carrier,* supra, 488. That determination of ineffectiveness is made under the two part test for ineffective assistance of counsel under *Strickland* v. *Washington,* supra.[8] If a petitioner can

---

[7] We recognize that "[w]e are not compelled, of course, to conform our postconviction procedure to that of the federal jurisdiction." *Vena* v. *Warden,* 154 Conn. 363, 366, 225 A.2d 802 (1966); see *Paulsen* v. *Manson,* 193 Conn. 333, 337, 476 A.2d 1057 (1984) (applying deliberate bypass standard rather than cause and prejudice test). We conclude only that the deliberate bypass test applies to ineffective assistance of appellate counsel claims even when the basis for the ineffectiveness is the omission of an issue on appeal. But cf. *Murray* v. *Carrier,* 477 U.S. 478, 492, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). We decline to address the conclusion of the Appellate Court that the cause and prejudice test applies to the strategic or tactical determination of whether to include a particular issue on appeal in circumstances other than ineffective assistance of appellate counsel claims.

[8] The United States Supreme Court has also held that a claim of ineffective assistance of counsel should be presented to the state courts as an independent claim before it may be used to establish cause for a procedural

prove that his attorney's performance fell below acceptable standards, and that, as a result, he was deprived of a fair trial or appeal, he will necessarily have established a basis for "cause" and will invariably have demonstrated "prejudice." See 3 W. LaFave & J. Israel, Criminal Procedure (1984) § 27.4, p. 351 n.80 ("[o]f course, if the basis for 'cause' is itself a constitutional violation, then a separate showing of actual prejudice should not be necessary"). Although the wording of the tests is not identical and some authorities disagree; see, e.g., M. Marcus, "Federal Habeas Corpus After State Court Default: A Definition of Cause and Prejudice," 53 Fordham L. Rev. 663, 731 n.418 (1985) ("[w]here defendant has a viable sixth amendment ineffectiveness claim, his prejudice burden would be lighter than in *Sykes* cases"); we conclude that once a defendant is denied a fair appeal that causes an unreliable conviction to stand under *Strickland* v. *Washington*, it is obvious that his ineffective counsel worked to his "actual and substantial disadvantage, infecting his [appeal] with errors of constitutional dimension." (Emphasis omitted.) *United States* v. *Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816, reh. denied, 456 U.S. 1001, 102 S. Ct. 2287, 73 L. Ed. 2d 1296 (1982); cf. *Hines* v. *Enomoto*, 658 F.2d 667, 675 (9th Cir. 1981) (if cause and prejudice standard satisfied, certainly sixth amendment violation sustained). The similarity of the second part of the *Strickland* v. *Washington* test and of the prejudice prong of the cause and prejudice test of *Wainwright* v. *Sykes* makes a threshold showing of cause and prejudice unnecessary for ineffective assistance of appellate counsel claims. Rather than factoring in the *Strickland* v. *Washington* test to find cause, we conclude that it is simpler and

default in federal court. *Murray* v. *Carrier*, 477 U.S. 478, 488–89, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Rose* v. *Lundy*, 455 U.S. 509, 518, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). Obviously, such a consideration is inapplicable in a state habeas corpus proceeding.

more appropriate to move directly to the *Strickland* test. Thus, if counsel is shown to be within the acceptable range of conduct or the result is reliable, then the habeas petition must be denied. If counsel does not meet the *Strickland* v. *Washington* level of competence and the result is not reliable, then the petition must be granted. There is no need to confuse this process by utilizing the cause and prejudice test.

We conclude that when a petitioner raises a claim of ineffective assistance of appellate counsel because his attorney did not raise an issue on direct appeal, the deliberate bypass standard should be utilized. We also conclude that any claim invoking ineffective assistance of appellate counsel automatically satisfies the deliberate bypass requirement. In *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986), we decided to permit review of all claims of ineffective assistance of trial counsel in habeas corpus proceedings. In such instances, we assumed the deliberate bypass standard was automatically satisfied. Id. The same posture logically applies to ineffective assistance of appellate counsel claims. Thus, the petitioner has satisfied the deliberate bypass standard to the extent that his ineffective assistance of appellate counsel claim will be addressed.

## II

### A

We move to the issue of whether the petitioner's appellate counsel rendered ineffective assistance of counsel under the standard of *Strickland* v. *Washington,* supra. In order to establish his claim for relief, the "petitioner must make a two-fold showing: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by

lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." *Herbert* v. *Manson,* 199 Conn. 143, 144–45, 506 A.2d 98 (1986); see *Strickland* v. *Washington,* supra, 687; *Levine* v. *Manson,* supra, 639–40; *Williams* v. *Manson,* supra, 564. A reviewing court can find against a petitioner on either ground, whichever is easier. *Strickland* v. *Washington,* supra, 697; see *Nardini* v. *Manson,* 207 Conn. 118, 124, 540 A.2d 69 (1988) ("[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice"); see also *Lewis* v. *Lane,* 832 F.2d 1446, 1460 (7th Cir. 1987).

We conclude that it is appropriate to decide this case by asking first whether the failure to raise the "year and a day" issue by appellate counsel fell below the standard of reasonable competence.[9] We recognize that to reach the issue of the "year and a day" rule on the merits first would permit substantive review of a claim that was not raised on direct appeal. It is not our policy to encourage petitioners to raise certain claims on direct appeal and then save others for habeas corpus. See *Wainwright* v. *Sykes,* supra, 89 (goal of cause and prejudice test is to prevent "sandbagging" by defense lawyers). Because we are confronted in this case with a sixth amendment right to have effective assistance of appellate counsel, however, we must answer that claim. In doing so, however, we do not at all encourage petitioners to couch those issues that were not raised on appeal as ineffective assistance of appellate

---

[9] The Appellate Court also reached only the competency part of the test of *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), although it did so in the framework of the "cause" and "prejudice" test. *Valeriano* v. *Bronson,* 12 Conn App. 385, 393–95, 530 A.2d 1100 (1987).

counsel claims in order belatedly to get full review of those issues on the merits. A number of commentators have recognized this situation as inviting this type of abuse. See P. Tague, "Federal Habeas Corpus and Ineffective Assistance of Counsel: The Supreme Court Has Work to Do," 31 Stan. L. Rev. 1, 56–57, 61 (1978); note, "Federal Habeas Corpus Review of State Forfeitures Resulting from Assigned Counsel's Refusal to Raise Issues on Appeal," 52 Fordham L. Rev. 850, 863 n.69 (1984). One noted treatise has concluded: "There also is some concern that new appellate counsel, playing Monday morning quarterback, will want to raise objections that were not presented at trial (and therefore ordinarily would not be reviewable on appeal) and consequently would turn to an ineffectiveness claim as a device for bringing those issues to the attention of the appellate court." 2 W. LaFave & J. Israel, supra, § 11.10, p. 97 n.14. This potential for abuse, however, is minimized because the burden that the petitioner must sustain for a favorable outcome on his ineffective assistance of counsel claim is a higher one than he would have had to sustain had the actual merits of the same issue been raised on direct appeal. See *Wainwright* v. *Sykes,* supra, 105 n.6 (Brennan, J., dissenting) ("[i]t is perfectly consistent for even a lawyer who commits a grievous error—whether due to negligence or ignorance—to be deemed to have provided competent representation"). It is possible to leave out a dispositive issue on appeal and nevertheless, to have furnished a petitioner with adequate counsel under the sixth amendment. See, e.g., *Carter* v. *State,* 73 Md. App. 437, 445, 534 A.2d 1015 (1988). A reviewing court must be "highly deferential" to counsel's decision and judge the action "from counsel's perspective at the time." *Strickland* v. *Washington,* supra, 689. Thus, our action in reaching the petitioner's challenge based on ineffective assistance of counsel will further the goals

of finality and minimize intentional defaults as well as provide relief for petitioners who have been denied their constitutional rights in appropriate cases. With the framework for our standard of review in place, we move to the issue of whether the petitioner was denied effective assistance of appellate counsel because counsel's performance fell below the standard of reasonably competent counsel.

B

The "year and a day" rule was raised by trial counsel for the petitioner, assistant public defender Richard Shiffrin, in a pretrial motion to dismiss the indictment, which the trial court, *Hadden, J.,* denied. Attorney John Williams entered an appearance in the case during jury selection, served as cocounsel during the trial, and then filed an appeal to this court for the petitioner. See *State* v. *Valeriano,* supra. It is his decision not to raise the "year and a day" rule on appeal that is at issue here. Our task here is to decide whether the decision not to appeal the "year and a day" ruling fell below the " ' " 'reasonabl[e] competen[ce] or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law.' " ' " *Levine* v. *Manson,* supra, 639. We conclude that the petitioner's appellate counsel did not fall below the standard guaranteed by the sixth amendment to the United States constitution to defendants on appeal as of right. *Evitts* v. *Lucey,* 469 U.S. 387, 397, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).

Counsel for the petitioner testified that he examined the trial court's extensive memorandum of decision, which covered ten pages on the issue of a "year and a day" rule, reviewed cases from other jurisdictions, and analyzed the felony murder statute in light of the role that Connecticut's enactment of the penal code played in abrogating the common law. An attorney with

experience in hundreds of criminal cases and several dozen appeals, Williams testified that his decision to omit the issue was a strategic one. Thus, he was aware of the issue in accordance with the directive in *Paulsen* v. *Manson,* supra, that appellate counsel must "review the transcripts of all prior proceedings in order to fulfill the role of active advocate." Williams also testified at the habeas corpus hearing that "pursuing that issue would seriously weaken" what he perceived to be an otherwise strong appeal. Such a strategic concern was given great weight by the United States Supreme Court in *Jones* v. *Barnes,* supra, 751–52, where it said: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." See also *Smith* v. *Murray,* 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986); R. Stern, Appellate Practice in the United States (1981) p. 266 ("[t]he effect of adding weak arguments will be to dilute the force of the stronger ones").

In *Jones,* the United States Supreme Court also said that "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. . . . A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Jones* v. *Barnes,* supra, 752–53. In doing so, the court rejected the Second Circuit Court of Appeal's announcement of "a new *per se* rule that appellate counsel must raise every nonfrivolous issue requested by [a] client . . . ." Id., 750–51. The *Jones* court pointed out that the per se rule of the Second Circuit Court of Appeals was contrary to *Anders* v. *California,* 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493, reh. denied, 388 U.S. 924, 87 S. Ct. 2094,

18 L. Ed. 2d 1377 (1967), which recognized that the role of the advocate " 'requires that he support his client's appeal to the best of his ability.' " *Jones* v. *Barnes,* supra, 754; see *Cunningham* v. *Henderson,* 725 F.2d 32, 35 (2d Cir. 1984). *Cunningham,* a post-*Jones* case, underscored the teaching of *Jones* that "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders." Jones* v. *Barnes,* supra; see *Cunningham* v. *Henderson,* supra; accord *Gulliver* v. *Dalsheim,* 739 F.2d 104, 107 (2d Cir. 1984). In an appeal that was not frivolous, the New York Court of Appeals, citing *Jones,* held that appellate counsel was "duty bound" to advance only one of the issues advanced by the defendant and "was not obliged to discuss the nine allegedly meritless claims his client wanted addressed." *People* v. *Vasquez,* 70 N.Y.2d 1, 4, 509 N.E.2d 934, 516 N.Y.S.2d 921 (1987). The *Jones* court was obviously concerned that the appellate advocate, as the Second Circuit Court of Appeals later put it, "select what, in his professional judgment, are the most promising issues for review." *Cunningham* v. *Henderson,* supra, 35; see *Jones* v. *Barnes,* supra, 751–52.

Relying on his research and the trial court's memorandum of decision, counsel came to the reasonable conclusion that the "year and a day" rule did not exist in Connecticut when the petitioner had committed the offense. We agree that a reasonably competent attorney could have come to this conclusion.

First of all, it is very doubtful if the rule ever existed in Connecticut. See *State* v. *Jacowitz,* 128 Conn. 40, 44, 20 A.2d 470 (1941) ("[m]urder, at common law, is the unlawful killing of one human being by another with malice aforethought"). The "year and a day" rule was referred to in *State* v. *Bantley,* 44 Conn. 537, 538 (1877),

but only as a part of a larger quote that addressed the dispositive issue in that case: the law of proximate cause concerning intervening acts by a physician that were alleged to be negligent in the medical treatment of a victim. The victim in *Bantley* died eleven days after being shot by the defendant. Id., 537. The passage from *Bantley* was quoted again in *State* v. *Jacobs,* 194 Conn. 119, 124, 479 A.2d 226 (1984), cert. denied, 469 U.S. 1190, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985), but again it was as part of the law on the issue of the negligent medical treatment and proximate cause. In any event, discussion in a judicial opinion that goes beyond the facts involved in the issues is mere dictum and does not have the force of precedent. See *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 23–24, 441 A.2d 49 (1981); *Sharkiewicz* v. *Smith,* 142 Conn. 410, 412, 114 A.2d 691 (1955).

The petitioner places great stress on *State* v. *Assuntino,* 173 Conn. 104, 376 A.2d 1091 (1977), where, despite the amendment of the statute authorizing writs of error from the Court of Common Pleas which deleted any reference to that court, we held, nevertheless, that authority still persisted because the writ existed under our common law. *Assuntino* is distinguishable from this case. In *Assuntino,* we recognized that "the common-law origin of the writ of error was recognized [soon after our 1818 constitution] both by statute and by court decision." Id., 110. By contrast, we have been referred to no Connecticut decision that has adopted and applied the "year and a day" rule nor has our research disclosed any.[10]

---

[10] Swift's Digest refers to the common law "year and a day" rule. 2 Z. Swift, A Digest of the Laws of the State of Connecticut (1823) p. 291. Swift, however, makes no statement that the "year and a day" rule was determined to be part of Connecticut common law as opposed to a part of the English common law in general. It must be remembered that Swift's Digest not only covered Connecticut law but encompassed the law "gen-

Second, the adoption of the comprehensive penal code in 1969 abrogated the common law and set out substantive crimes and defenses in great detail.[11] General Statutes § 53a-1 et seq. The petitioner points to General Statutes § 53a-4[12] of the code, entitled "Saving clause," and argues that this provision maintains the viability of the "year and a day" rule. We do not agree. Generally speaking, the "savings clause," as the petitioner argues, saves something, i.e., the bar of the "year and a day" rule, that would otherwise have been lost. See generally *Simborski* v. *Wheeler,* 121 Conn. 195, 183 A. 688 (1936); *Heath* v. *King,* 665 S.W.2d 133, 136 (Tex. Civ. App. 1984). "The usual function of a saving clause is to preserve something from immediate interference . . . ." *Knickerbocker Ice Co.* v. *Stewart,* 253 U.S. 149, 162, 40 S. Ct. 438, 64 L. Ed. 834 (1920); *Quirk* v. *United States,* 161 F.2d 138, 143 (8th Cir. 1947). This argument assumes, of course, that that rule had been adopted in Connecticut and remained legally viable at the time the penal code was enacted into law in 1969. We have already determined that claim against the petitioner. Even if we assume, arguendo, that its viability had persisted until 1969, the argument must still be resolved against the petitioner.

Initially, we note that the general comment by the Commission to Revise the Criminal Statutes (commission) at the beginning of chapter 951 of the General Statutes, which begins with § 53a-4, relates that all the

---

erally." See P. O'Sullivan, "Biographies of Connecticut Judges—Zephaniah Swift," 19 Conn. B.J. 181, 192 (1945). Under the circumstances, any reliance on Swift would have been a weak position.

[11] The Model Penal Code, which is reflected in many of Connecticut's penal code provisions, expressly abrogates the year and a day rule. See II A.L.I., Model Penal Code and Commentaries (1980) § 210.1, pp. 9–10.

[12] General Statutes § 53a-4 provides: "SAVING CLAUSE. The provisions of this chapter shall not be construed as precluding any court from recognizing other principles of criminal liability or other defenses not inconsistent with such provisions."

sections in chapter 951 subsequent to § 53a-4 "set out the basic principles of and defenses to criminal liability." 28 Conn. Gen. Stat. Ann. c. 951, commission comment, p. 195 (West 1985). It also notes that this is the first time "most of these principles and defenses have been articulated in statutory form" and that "[m]ost of [the] provisions are simply restatements of the case law of the state; some constitute rules of law different from the prior law or articulate rules of law where none had been stated under prior Connecticut law." 28 Conn. Gen. Stat. Ann. c. 951, commission comment, pp. 195–96 (West 1985). Fairly viewed, this evidences a comprehensive and careful survey of the state of the criminal law covering the specific sections referred to in this comment, i.e., General Statutes §§ 53a-5 through 53a-23. This particular chapter is entitled "Penal Code: Statutory Construction; Principles of Criminal Liability." Chapter 951 covers not only the requisite mental intent for crimes, accessorial liability, but contains a number of statutes concerning various defenses. See, e.g., General Statutes §§ 53a-10, 53a-12, 53a-13, 53a-14, 53a-15, 53a-16. Moreover, we note that the commission's comment on certain statutes in chapter 951 addresses the effect of those statutes on the common law. See, e.g., General Statutes §§ 53a-18, 53a-20. No mention, however, is made of the "year and a day" rule in any of these statutes nor, for that matter, in chapter 952 of the General Statutes which is entitled "Homicide."

The savings clause does provide that "[t]he provisions *of this chapter* shall not be construed as precluding any court from recognizing other principles of criminal liability or other defenses not inconsistent with these provisions." (Emphasis added.) General Statutes § 53a-4. As the petitioner points out, the commission comment on § 53a-4 includes the statement that "[t]he purpose of this saving clause is to make clear that the provi-

sions of sections 53a-5 to 53a-23, which define the principles of criminal liability and defenses, *are not necessarily exclusive.* A court is not precluded by sections 53a-5 to 53a-23 from recognizing other such principles and defenses *not inconsistent therewith.*" (Emphasis added.) Conn. Gen. Stat. Ann. c. 951, commission comment, p. 196 (West 1985). While the commission comment hardly has the force of enacted law, it, nevertheless, may furnish guidance. It appears from both § 53a-4 and the comment on it above referred to that § 53a-4 addresses only those statutes in the chapter in which it appears, i.e., chapter 951. There is no question that the "year and a day" rule, in essence, is a matter in bar to a prosecution for murder, if not for other homicide offenses. See, e.g., 1 P. Robinson, Criminal Law Defenses § 105 (h). It prevents conviction for a homicide where the victim does not die within a year and a day of the defendant's conduct causing the death.

Even accepting the commission comment on § 53a-4 that its purpose is to make clear that all the subsequent statutes, which define the principles of criminal liability and defenses, "are not necessarily exclusive," that comment is still subject to the statutory direction in § 53a-4 that the lack of preclusion by a court of "recognizing . . . other defenses" must still be "not inconsistent" with the provision of chapter 951. An examination of all the provisions in that chapter after § 53a-4 demonstrates that a matter in bar such as the "year and a day" rule would be inconsistent with those provisions. First, given the sweeping overhaul of the criminal law wrought by the penal code in 1969, it is wholly illogical that such a defense in bar not be specifically included in the code or this chapter which is rife with "defenses." Particularly is this so where the crime of homicide is involved. In addition, we have already referred to the original reason for the "year and a day" rule developed

hundreds of years ago when medical science was hardly as advanced as it is today. This, too, could have been a factor for its not appearing in our penal code.

It must also be remembered that it was the petitioner, not the respondent, who had the burden of proving that the rule was "saved" by § 53a-4. He has not sustained that burden. In our view, to say that it was "saved" by § 53a-4 would be inconsistent with the provisions of chapter 951 and the accomplishment of its statutory objectives. The petitioner's appellate counsel, therefore, could have come to the reasonable conclusion that the saving clause of § 53a-4 would not avail the petitioner.

Lastly, although a majority of states retain the common law "year and a day" rule; *State* v. *Minster,* 302 Md. 240, 246–47, 486 A.2d 1197 (1985); annot., 60 A.L.R.3d 1323, 1325 (1974); it is in decline throughout the United States. See *State* v. *Minster,* supra, 246 (noting that sixteen states have abolished it since 1941); 1 P. Robinson, supra, § 105 (h) ("[a] narrow and decreasing majority of jurisdictions still recognizes the year and a day rule"). Numerous jurisdictions have abolished it. See, e.g., *People* v. *Stevenson,* 416 Mich. 383, 394, 331 N.W.2d 143 (1982); *State* v. *Young,* 148 N.J. Super. 405, 412–13, 372 A.2d 1117 (1977); *People* v. *Legeri,* 239 App. Div. 47, 49, 266 N.Y.S. 86 (1933); *Commonwealth* v. *Ladd,* 402 Pa. 164, 173, 166 A.2d 501 (1960). Many of these courts have recognized that the policy behind the rule is dubious in view of the advanced nature of medical technology in the twentieth century. See, e.g., *People* v. *Stevenson,* supra, 392; *State* v. *Young,* supra, 412; *Commonwealth* v. *Ladd,* supra.

The record demonstrates that the petitioner's appellate counsel was aware of the "year and a day" issue and had the benefit of the trial court's lengthy memorandum. All the research available to the petitioner's counsel pointed to the fact that the rule had either never

been adopted in Connecticut or had been abrogated by the enactment of the penal code. The record also shows that there were three other issues that counsel thought were stronger on appeal and this assessment was also in the range of reasonably competent counsel. We conclude that the performance of the petitioner's counsel did not fall below the standard of reasonable competence displayed by lawyers with ordinary training and skill in the criminal law. It is unnecessary to reach the issue of whether the petitioner was deprived of a fair appeal that was not reliable because of counsel's actions. We agree with the Appellate Court that the record does not support a claim of ineffective assistance of counsel. Its decision to affirm the trial court's denial of the petitioner's writ of habeas corpus was correct.

There is no error.

In this opinion PETERS, C. J., CALLAHAN and COVELLO, Js., concurred.

SHEA, J., concurring. I agree with the result and also with the resolution of the substantive issue of the present viability of the common law "year and a day" rule in part II B of the opinion. I do not join in the remainder of the opinion because the elaborate discussion of the availability of relief in a habeas corpus proceeding where there has been a procedural default in failing to raise seasonably the grounds claimed to invalidate the conviction is quite unnecessary in this extraordinary case and overlooks its unique nature.

It is absolutely clear in this case that the victim of the fire died more than one year after the criminal act of the defendant that caused her death. See *State* v. *Valeriano,* 191 Conn. 659, 661, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984). Thus, if the year and a day rule were

presently in force, the record would plainly demonstrate that the petitioner was innocent of the crime of felony murder of which he was convicted and that there has been a fundamental miscarriage of justice. In such a situation, where the record unquestionably establishes that an essential element for conviction of a crime is lacking, the writ of habeas corpus must be held to be available regardless of any procedural barriers.

In *Murray* v. *Carrier,* 477 U.S. 478, 495, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), where the United States Supreme Court applied the "cause and prejudice" standard to a procedural default of appellate counsel, the court recognized, nevertheless, that "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " "Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Id., 496. This court in exercising its habeas corpus jurisdiction should do no less. "The very nature of the writ demands that it be administered with the initiative and flexibility to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris* v. *Nelson,* 394 U.S. 286, 291, 89 S. Ct. 1082, 22 L. Ed. 2d 281, reh. denied, 394 U.S. 1025, 89 S. Ct. 1623, 23 L. Ed. 2d 50 (1969). When it is clear, as in this case, that a petitioner would be innocent of the crime for which he stands convicted if a nonfrivolous issue of substantive law is resolved in his favor, not even a deliberate bypass of the appeal process should preclude a determination of that issue on its merits. Courts ought not to "suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." *Hensley* v. *Municipal Court,* 411 U.S. 345, 350, 93 S. Ct. 1571, 36 L. Ed. 2d 294 (1973).

In the extraordinary situation presented in this case, where the petitioner's conviction would be demonstrably unjustified if his substantive law claim were sound, I would hold simply that habeas corpus is available to resolve such a nonfrivolous claim despite any procedural default and regardless of whether appellate counsel measured up to the appropriate standard.

Accordingly, I agree with the result.