[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner (Robinson), filed his Second Amended Complaint dated June 4, 2001 claiming ineffective assistance of counsel for the following reasons:
 1. Failure to adequately and effectively consult with or advise Petitioner about testifying at trial;
 2. Failure to conduct an adequate pretrial investigation into facts and witnesses in support of the state's case and Petitioner's Defense; and
3. Failure to prepare the case for trial.
Attorney David Abbamonte (Abbamonte) was trial counsel in this case, having been a public defender since 1993 with many years in the private practice of criminal law. Attorney Richard Marquette (Marquette) called Abbamonte to the stand who testified substantially as follows: Abbamonte CT Page 14836 met with Robinson at the courthouse when first assigned, who said he was filling out a job application at United Parcel Service (UPS) with his girlfriend present or that he picked up his girlfriend at the hospital where she worked after filling out his application at the time of the murder. Abbamonte then filed motions for disclosure and when the answers came in he read them and evaluated them and went to the scene of the crime. He had an investigator with the Public Defender's office check with UPS to find anyone there who could remember his client being there. Nobody at UPS could verify what Robinson asserted as his alibi. After his discovery he discussed with Robinson the evidence the state would produce against him. Abbamonte told Robinson there were three or four witnesses that gave statements to the police indicating they saw Robinson shoot the victim. Accordingly, Abbamonte concluded that that would be the state's case and his side of the case necessarily fell upon a jury believing Robinson's alibi. Abbamonte informed Robinson that the minimum sentence for murder is 25 years. Robinson said he would not take that kind of time so it left the case to be tried. Robinson continued to assert his alibi. Abbamonte informed Robinson it was a take it or leave it offer, and that he could not get less with such a charge. Abbamonte testified he had all the reports and documents and that he went over the statements of the witnesses with Robinson as he customarily did. Abbamonte said there were no surprises in the case and that Robinson made his decision to go to trial and he was willing to testify. Abbamonte advised him that since the state had three witnesses that he was the "shooter" and since he was relying on his alibi he thought the jury would want to hear from him and his girlfriend.
Under cross examination by attorney Frederick Fawcett (Fawcett) for the respondent, the state had developed a motive from the three sworn statements of the state's witnesses that Robinson made statements prior to shooting the victim that he was going to "go out and get the victim" because the victim had shot at him a couple of weeks earlier. Fawcett developed that both Robinson and his girlfriend testified at the trial relating to his alibi which was not substantiated by anybody connected with UPS after the investigation. Robinson made the choice to testify so Abbamonte had no choice but to put him on the stand. The state was not willing to reduce the charge so the minimum was 25 years which Robinson rejected.
Robinson testified at the habeas proceeding (Page 51 of HC Transcript) that it was his decision to reject the plea bargain and that he was told that if he did not take the offer he would have to go to trial. Robinson admitted again that Abbamonte asked him again if he wanted to testify and that he might have given him advice about that but it remained Robinson's decision to testify. CT Page 14837
Robinson further testified that he was at UPS and that his girlfriend likewise would testify to that fact because he picked her up after he had been at UPS. Robinson at no time said he had any witnesses other than himself and his girlfriend to support his alibi.
Marquette called to the stand Vicky Hutchinson (Ms. Hutchinson), an attorney who practices law in the Danbury area who testified in this case as an expert in the criminal law. Ms. Hutchinson testified that in this case the investigator or the attorney should have investigated one Duane Randolph who was with Robinson's girlfriend at the time Robinson claimed he picked up his girlfriend who testified in the case. Marquette informed the habeas court that Duane Randolph was one of the witnesses who testified that Robinson was the shooter and Ms. Hutchinson's notes revealed that the girlfriend testified as to the presence of Duane Randolph with her at the time that Robinson picked them up when she testified. Hutchinson testified that Abbamonte failed to investigate Duane Randolph and/or speak to Duane Randolph.
Marquette questioned Ms. Hutchinson as to how a reasonably experienced defense attorney would prepare the case for trial. Ms. Hutchinson stated that in this case the defense theory was an alibi and that all witnesses should have been investigated and interviewed.
Abbamonte testified at no time did either the girlfriend or Robinson tell him about Duane Randolph and that the identify of Duane Randolph was never disclosed to him by Robinson or his girlfriend before trial.
The appropriate evidence in this case was to produce the alibi witness Duane Randolph who according to Ms. Hutchinson's notes was one of the three persons who identified Robinson as the shooter. The court should not be left with evidence that leaves it to speculation or surmise to persuade the court to grant a new trial under habeas proceedings.
In Strickland v. Washington, 466 U.S. 668 (citations omitted), the court laid down the standards for determining whether a petitioner under habeas proceedings was deprived of their constitutional right of effective assistance of counsel. The court held that the petitioner has the burden of proof to show that defense counsel's performance was not reasonable, competent or within the range of competence of attorneys with ordinary training and skill in the criminal law; and but for counsel's performance there is a reasonable likelihood that the result would have been different.
 "A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as CT Page 14838 of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment". Strickland v. Washington, supra, 466 U.S. 690.
The claim made that the attorney failed to interview or subpoena Duane Randolph is unavailing in this case since he relied on the information provided by both Robinson and the girlfriend before trial. This court cannot conclude that the omission to either interview or call Duane Randolph does not demonstrate without what his testimony would have been effect the results of the trial. The second prong of prejudice has not been shown in this case under the circumstances.
The next claim made by the petitioner is that he was not adequately consulted with or advised about testifying at trial. Abbamonte and Robinson fully discussed the necessity of his taking the stand in view of his position that he was at UPS making an employment application. There was only one witness to substantiate his alibi. Attorney Hutchinson, who was produced to show that Abbamonte fell below the standard of care within reasonable assistance of counsel agreed that the decision to testify is for the petitioner to make. The state already had two witnesses testify as to Robinson's motive and that he had left the scene to support the doctrine of consciousness of guilt. The testimony of Robinson was sound trial strategy in view of Robinson's insistence to rely on his alibi defense.
The third claim in his habeas proceeding is that Abbamonte did not adequately prepare for trial is not supported by any evidence presented.
 "In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: "`(1) that his counsel's performance fell below the required standard of reasonable competence or CT Page 14839 competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial.'" Valeriano v. Bronson, 209 Conn. 75, 85-86, 546 A.2d 1380
(1988); see also Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court can find against the petitioner on whichever ground is easier. Valeriano v. Bronson, supra; Nardini v. Manson, 207 Conn. 118 124, 540 A.2d 69
(1988).
 In reviewing the claim, this court "`must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under these circumstances, the challenged action "might be considered sound trial strategy.'" "Levine v. Manson, supra., 640; see also Chace v. Bronson, 19 Conn. App. 674, 678, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). In assessing the petitioner's claim, this court must make every effort to "`eliminate the distorting effects of hindsight."
The petitioner has failed to overcome the presumption of effective assistance. Petition is denied.
By the Court,
Frank S. Meadow, J.T.R.