[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
As the result of his arrest on April 7, 1984 in Bridgeport, the petitioner, Gonzalo Avila, was charged with assault in the first degree for the shooting of one Robert Szymanski. After a three day trial the petitioner was found guilty of that charge. On September 18, 1985, he was sentenced to a term of imprisonment of eighteen years.
The petitioner's claims, raised in his amended petition for writ of habeas corpus dated December 15, 1989, all involve alleged ineffective assistance of trial counsel concerning (1) failure to move to suppress the petitioner's statements to the police; (2) misinforming the petitioner as to the strength of the state's case against him; (3) advice given to the petitioner that he should not plea bargain because he would prevail at trial; (4) failure to convey a plea bargain offer made by the state; (5) advice given to the petitioner that he should testify at the trial. The petitioner has also claimed in paragraph two of his petition that the alleged errors referred to herein have denied him due process of law in violation of his rights under the Sixth andFourteenth Amendments to the United States Constitution and Article I of the Connecticut Constitution.
In State v. Leecan, 198 Conn. 517, 541-43 (1986), the Connecticut Supreme Court decided to review claims of ineffective assistance of trial counsel in habeas corpus proceedings, where the sole claim for relief is ineffective assistance of counsel. Further, the Court will not apply the deliberate bypass rule to any of the various claims of ineffective assistance of trial counsel. Valeriano v. Bronson,209 Conn. 75, 85 (1988).
At the hearing of June 4, 1990, the petitioner withdrew all but two claims of ineffective assistance of counsel. The remaining claims are (1) failure to inform the petitioner of a particular plea bargain offer and (2) advising the petitioner to turn down a reasonable plea bargain offer.
The right to counsel, guaranteed by the 6th amendment via the 14th amendment, "is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 25 L.Ed.2d 763,90 S.Ct. 1441 (1970). In interpreting this requirement, the United States Supreme Court has stated:
 "[W]e must take . . . [the 6th amendment's purpose] — to ensure a fair trial — as the guide. The benchmark for judging any claim of ineffectiveness must be CT Page 3366 whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. . . . A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings it cannot breakdown in the adversary process that renders the result unreliable."
Strickland v. Washington, 466 U.S. 668, 686-87, 80 L.Ed.2d 674,104 S.Ct. 2052 (1984), reh. denied, 467 U.S. 1267, 82 L.Ed.2d 864,104 S.Ct. 3562 (1984). The Connecticut courts have adopted this analysis judging such claims in state habeas proceedings. Fair v. Warden,211 Conn. 352, 402-404 (1989); Valeriano v. Bronson, 209 Conn. at 85-87. Moreover, the state and federal constitutional standards for review of ineffective assistance of counsel claims are identical. Aillon v. Meachum, 211 Conn. 352, 357 (1989).
"With regard to the performance component of the inquiry, `the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Id., quoting Strickland,466 U.S. at 687-88; see also State v. Clark. 170 Conn. 273, 283 (1976); Miller v. Angliker, 4 Conn. App. 406, 419 (1985). The Strickland court stated that while prevailing norms of practice are guides in determining what is reasonable, "they are only guides." Strickland v. Washington, 466 U.S. at 688. The court set forth the standard as follows:
 Judicial scrutiny of counsel's performance must be highly deferential. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' (Citation omitted.). . . . A convicted defendant, making a claim of CT Page 3367 ineffective assistance, must identify the acts or omissions of counsel that `are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . . [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
Id., at 689-90. Throughout its opinion, the court cautioned that counsel's performance must be examined in light of the particular circumstances as they existed at the time of trial. Id. Finally, the court noted that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." Id., at 693.
The Connecticut Supreme Court has also noted that "it is perfectly consistent for even a lawyer who commits a grievous error — whether due to negligence or ignorance — to be deemed to have provided competent representation. It is possible to leave out a dispositive issue on appeal and nevertheless, to have furnished a petitioner with adequate counsel under the sixth amendment." Valeriano,209 Conn. at 87, quoting Wainwright v. Sykes, 433 U.S. 72, 105 n. 6 (1977) (Brennan, J., dissenting).
Even if counsel is found to have committed a professionally unreasonable error, this does not warrant setting aside the conviction if the error had no effect on the judgment. Strickland,466 U.S. at 691. Except in limited circumstances, such as an actual conflict of interest, the petitioner "must affirmatively prove prejudice." Id. Moreover, it is not enough to show that the error had some "conceivable effect" on the outcome of the proceeding for "[v]irtually every act or omission of counsel would meet that test." Id. Instead, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. Stated another way, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id., at 695.
The facts of this case indicate that on April 7, 1984, the petitioner, Gonzalo Avila was arrested and charged with assault in the first degree in violation of Sec. 53a-59(a)(i) for shooting Robert Zsymanski outside the petitioner's apartment building in Bridgeport. The petitioner claimed the shooting was in self defense, the result of the victim's insistence that the petitioner sell him drugs and the CT Page 3368 victim's threatening gestures directed to him when the petitioner insisted that he did not sell drugs. (At the trial the petitioner apparently described the shooting as accidental.) When he was arrested the petitioner was on probation for a 1983 conviction for possession of narcotics and possession of a pistol without a permit. He had been convicted of attempted larceny in 1981 and criminal mischief in 1972.
After posting bond shortly after his arrest and discussing the case with Public Defender Holden the petitioner employed Attorney Joseph Mirsky of Bridgeport to represent him. In the course of the year that went by pretrial discussions were held. The claims of the petitioner are based upon his perceptions of the results of these negotiations.
On April 16, 1985, the petitioner claims Attorney Mirsky made him aware of a plea bargain offer of "seven years suspended after four," if he entered a plea of guilty. He says he understood the plea bargain, at the time, to require him to serve eleven years, although he presently (June 4, 1990) understands it meant something else. At about the same time he claims Mirsky told him to turn down this offer because it was too much and there were "no witnesses." The petitioner further claims that sometime after this petition was filed he learned of a plea bargain offer, which, if accepted, would have required him to serve only three years. He says that his attorney never communicated this offer to him at any time.
Attorney Mirsky's recollections of the results of the pre-trial conference do not mirror the testimony of the petitioner. Mirsky is a criminal lawyer with thirty-eight years of experience in the Bridgeport area. He has a busy practice. Five years have expired since the conference and he says he does not have total recall of the events. He does recall that Judge Landau, as the presiding judge handling pre-trials, did indicate a willingness to accept a plea agreement that called for a three year sentence to serve but that the state apparently said no to such an agreement. He admitted saying, in deposition testimony, that the State may have been a party to this agreement. But on June 4, 1990, Mirsky indicated he did not know if the State's Attorney had agreed to the plea agreement of three years to serve. On recross examination by the respondent, Mirsky indicated that his testimony at the deposition could have meant that the State refused to go along with what Judge Landau suggested.
Mirsky recalled that there was an offer by the State, probably seven after four or five that he communicated to the petitioner, who rejected it. Mirsky recalls that Avila was "insistent, pretty much, that it was self defense" and that he wasn't going to accept any plea bargain. He specifically denied telling the petitioner the victim in the case was missing or unavailable.
Jury selection began June 16, 1985. On June 18, 1985, just before CT Page 3369 the jury was called to begin to hear the evidence, Attorney Mirsky reported to the trial judge, Judge Lavery, that the defendant had turned down an offer of the State made that morning to serve "seven years, suspended after four years, which includes [the unexpired portion of any sentence for] any violation of probation." (This statement was not a part of the original transcript of trial and was not made a part of the record until after completion of the habeas hearing of June 4, 1990.) The trial continued, resulting in the petitioner's conviction and his sentencing to a term of eighteen years.
Attorney Gary Nicholson, an Assistant State's Attorney, was the prosecutor at the trial and took part in some of the pretrial discussion. At the habeas hearing, he identified the notes made on the inside file jacket of the state's file. He recognized State's Attorney Browne's handwriting offering a five year sentence to be served which he indicated was consistent with the mandatory minimum sentence requirement where a violation of Sec. 53a-59(a)(i) had been charged. He concluded from reading the notes this was the only offer made by Attorney Browne until shortly before the trial began when the state "came off the mandatory" sentence and offered seven after four concurrent with the probation violation. He did not personally convey this offer to Attorney Mirsky until the morning of the trial. There were no notes on the inside jacket of the file indicating the state had offered a sentence of three years to serve. To his knowledge all offers that were made by the State would be reflected in the file.
At the time of trial the petitioner understood English according to Attorney Mirsky. He "had been around" his attorney testified and his prior record, which includes two prior jail sentences, confirm the petitioner was no stranger to the criminal justice system. It is hard to believe he understood the phrase "seven years suspended after four" to mean that a firm sentence of eleven years to serve was proposed.
The record also contradicts the petitioner's claim that Attorney Mirsky advised him to reject a plea offer of seven years suspended after serving four years because it was too much and there were no witnesses. The transcript of June 18, 1985, obtained June 13, 1990, is clear that Mirsky thought otherwise about the offer and in his testimony he expressly denied discussing the presence or absence of witnesses. It was the petitioner who rejected the offer. Further, the testimony does not support the petitioner's claim that an offer of three years to serve was not communicated to him. Mirsky's testimony on the issue does not give a clear answer. Nicholson, the prosecutor, says no. The notes in the State's file do not include such an offer, although the others are mentioned. And it seems logical to infer that a three year offer would have been the last offer made prior to trial. The court finds the State never made such an offer although Judge Landau, in his pre-trial conference, may have indicated his CT Page 3370 willingness to approve a plea agreement of three years to serve, if such a bargain had been struck.
The court concludes the petitioner has not shown by a fair preponderance of the evidence his claims of ineffective assistance of counsel. The petitioner has failed to meet the first criteria required by Strickland, 466 U.S. 686-87. There has been no showing that counsel's performance was deficient.
The petition is dismissed.
POTTER, J.