[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Thomas Brody, alleges in his petition for a Writ of Habeas Corpus originally filed with the Court on July 27, 2000, and amended for the final time on February 3, 2003, that he was denied the effective assistance of counsel at the trial level in violation of theSixth and Fourteenth Amendments to the United States Constitution as well as Article I, Section 8 of the Constitution of the state of Connecticut. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel alleges, in general, that the trial defense counsel allowed his client to improvidently plead guilty and then goes on to list four specific ways in which the petitioner's trial defense counsel was deficient. First, the petitioner asserts that the trial counsel failed to address the issues surrounding the petitioner's mental disabilities. Second, the petitioner complains that the trial counsel failed to address the question of the pending motion to withdraw before the petitioner pleaded guilty. Third, he alleges that his trial defense counsel allowed the petitioner to plead guilty when he was I under the influence of medication. Finally, he asserts that his trial counsel failed to investigate and pursue a defense that the petitioner's co-defendant was the actual perpetrator of the crime. As a result, the petitioner argues that his trial defense counsel was ineffective when he failed to ensure that the petitioner's plea was knowing, intelligent, and voluntary.
This matter came on for trial before the Court on March 5, 2003. The petitioner, and his trial defense counsel, Attorney Brian Karpe, were the only witnesses who testified at the trial. In addition, the Court received into evidence: transcripts of the petitioner's February 18, 2000, February 23, 2000 and March 23, 2000 appearances in the Superior Court, GA-12 as well as other documents. The Court has reviewed all of the testimony and evidence and makes the following findings of fact. CT Page 3168
Findings of Fact
1. The petitioner was the defendant in a criminal case, Docket Number CR99-168971, pending in the Judicial District of Hartford at GA-12, Manchester in which he was charged with numerous offenses involving larceny. The petitioner was also charged with being a Persistent Larceny Offender.
2. Attorney Brian Karpe, a special public defender appointed by the Court, represented the petitioner throughout all of the proceedings in this matter.
3. The petitioner believed that he was suffering from a mental disease or defect that would render him incompetent to stand trial. He testified that he was taking Prozac and Benedryl.
4. The petitioner wanted his attorney to move for an examination under the authority of CGS § 54-56d, however, Attorney Karpe did not believe that there was a good faith basis to ask the Court to enter such an order.
5. This dichotomy of opinion led the petitioner to file a grievance with the Statewide Bar Counsel against his trial defense counsel on or about February 17, 2000.
6. In consequence of the grievance, Attorney Karpe moved to withdraw from his representation of the petitioner.
 7. The Court neither granted nor denied this motion.
8. As of February 23, 2000, the petitioner had rejected all of the offers to enter into a plea agreement and had elected to proceed to trial. The matter was placed on the firm jury list.
9. The charges against the petitioner arose out of an incident that was alleged to have taken place at the Buckland Hills Mall in the town of Manchester. The petitioner and a woman by the name of Rosa Mendez were observed picking up various pieces of clothing at the Filene's Department store and Champs Sporting Goods store and paying for these items with a credit card issued to a Mary Kelly. Ms. Mendez signed the charge slip with the name "Mary Kelly." Both the petitioner and Ms. Mendez were arrested and charged with various counts of larceny, inter alia.
10. Attorney Karpe conducted a full pretrial investigation to include a CT Page 3169 report of a private investigator that had interviewed the co-defendant, Ms. Rosa Mendez. Ms. Mendez was willing to testify at the petitioner's trial and tell the jury that the petitioner did not know the credit card was stolen. She signed a written statement to that effect.
11. Attorney Karpe advised his client that if the jury believed the testimony of Ms. Mendez, that he had a good chance for acquittal. However, if her testimony was not believed, then he was quite likely to be convicted and face a lengthy prison sentence. The petitioner persisted in asking for a jury trial.
12. During their pretrial preparation, Attorney Karpe stated that the petitioner appeared lucid, actively involved with the trial preparations, and seemed to understand what was going on. The petitioner provided Mr. Karpe with suggested voir dire questions as well as suggestions for cross-examination.
13. Shortly before the day to pick a jury arrived, the petitioner called Attorney Karpe and asked him to see if he could still avail himself of the judicial pretrial offer.
14. On March 23, 2000, the petitioner's counsel was able to reach a pretrial agreement with the state whereby the petitioner would enter pleas of guilty, under the Alford doctrine, to two counts of conspiracy to commit larceny and being a Persistent Larceny Offender in exchange for which the state would enter a nolle as to all of the other outstanding charges and recommend a total effective sentence of twenty-six months to serve.
15. The trial court, Simon, J., conducted a full and detailed inquiry into the voluntariness and providence of the petitioner's plea.
16. Prior to accepting the petitioner's plea and entering a finding of guilty, the Court inquired if the petitioner had had sufficient time in which to consult with his attorney, whether he was satisfied with his lawyer's representation, and whether he wished to waive his rights to a jury trial, to confront and cross-examine his accusers and present defenses. The petitioner answered in the affirmative.[1]
17. Thereafter, the petitioner was convicted of the charged offenses in accordance with his plea and sentenced to the agreed upon sentence.
Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs CT Page 3170 of the test set forth by the United States Supreme Court in Stricklandv. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984) before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, infra,
at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra, at 687. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139 at 151 (1995). Given this modified standard to be applied to plea cases, the petitioner must first prove that the performance by his trial defense counsel was deficient and, that absent this deficient performance, the petitioner would have pled not guilty, would have gone to trial, and been acquitted.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. It is indisputable fact that many times if one had foreknowledge of certain events; different courses might well have been taken. Likewise, a habeas court knowing the outcome of the trial "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley v. Commissioner of Corrections,47 Conn. App. 253 at 264 (1979), cert. den. 243 Conn. 967 (1998). "A fair assessment of an attorney's performance requires that every effort be CT Page 3171 made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry v. Commissioner ofCorrection, 60 Conn. App. 313 at 317 (2000).
It is not necessary to consider whether a trial counsel's performance was deficient if the habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Strickland v.Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')" Valeriano v. Bronson, 209 Conn. 75 at 86 (1988).
Here, the petitioner voluntarily elected to forego his right to a jury trial and to plead guilty. "[G]uilt, or the degree of guilt, is at times uncertain and elusive, an accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty. McCoy v. United States, 124 U.S.App.D.C. 177, 179,363 F.2d 306, 308 (1966)." See North Carolina v. Alford, 400 U.S. 25
at 33 (1970).
In the instant case, the petitioner was charged with crimes that would have, had he been convicted on all charges, exposed him to a lengthy sentence approaching twelve years in prison. It is clearly understandable then why the petitioner would have made the voluntary decision to plead guilty under the Alford doctrine in order to minimize his potential exposure and obtain an earlier release from confinement. "Reasons other than the fact that he is guilty may induce a defendant to so plead . . . [and he] must be permitted to judge for himself in this respect. Statev. Kaufman, 51 Iowa 578, 580, 2 N.W. 275, 276 (1879)." See North Carolinav. Alford; 400 U.S. 25 at 33 (1970). By making the pragmatic decision to plead guilty, even though he may have believed himself to have been innocent, the petitioner obtained a sentence limited to twenty-six months and avoided a potentially lengthy prison sentence.
The ultimate decision as to whether a criminal defendant pleads guilty or pleads not guilty rests with the individual charged with the crime. A criminal defendant has a Constitutional right to persist in a plea of not CT Page 3172 guilty; even in the face of seemingly insurmountable obstacles. It is not, and never has been, for the trial defense counsel to decide the plea that his client should enter. However, "[b]ecause a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the `right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction.' Copas v.Commissioner of Correction, 234 Conn. 139, 154 (1995)." See Baillargeonv. Commissioner of Correction, 67 Conn. App. 716 at 721 (2002). Consequently, an attorney who fails to conduct an adequate investigation may well be providing ineffective representation.
In the instant case, it is clear that Attorney Karpe did all that he could have done to represent his client's interests. He met with his client on numerous occasions, procured the services of an investigator to interview defense witnesses and obtain statements, and reviewed the police reports and other documents contained within the prosecutor's file. He developed a theory of the defense, lined up a witness to testify in his client's behalf, and was adequately prepared for trial.
The one area that seems to have been most contentious between the petitioner and his trial defense counsel is the question of the mental condition of the petitioner. The petitioner asserts that he was mentally ill and was not competent to stand trial. He alleges that he was taking Prozac and Benedryl. Of course, had the petitioner been mentally ill such that he was unable to understand the proceedings that were going on, his plea of guilty would be vitiated and he should be permitted to withdraw that plea. All of the evidence supports the testimony of Attorney Karpe that he did not observe any deficiencies in his client's ability to perceive and understand what was going on in his case. In the transcripts, the petitioner appears to be lucid and answers the questions of the Judge coherently.
Moreover, there was absolutely no evidence, other than the assertion of the petitioner, presented to this Court to substantiate the petitioner's claims of mental illness. The petitioner testified to being on Prozac . There was no testimony as to the dosage that he was taking or medical records to substantiate whether he had complained of debilitating side effects prior to his plea. There was no evidence as to whether Prozac even has any side effects that could have adversely affected the petitioner's ability to understand the proceedings. This Court cannot draw its own conclusions as to what the effects, therapeutic or otherwise, of the drug Prozac might be in the absence of some evidence. While it might be considered common knowledge that Prozac is generally prescribed in the treatment of some types of mental illnesses, it is the duty of the CT Page 3173 litigants to present some form of evidence that would allow this Court to make detailed findings of fact.
As regards the testimony of the petitioner, there is a substantial question of credibility. First, the petitioner has a lengthy record of convictions for larceny and is a convicted felon. This, in and of itself, is a negative factor bearing on the credibility of a witness. Beyond this, however, are the falsehoods the petitioner admitted telling to Judge Simon in the plea canvass. It is true that the petitioner was not under oath and therefore did not commit the crime of perjury. Nevertheless, his admission demonstrates a mendacious character that casts additional serious doubt upon his credibility. Since the only evidence of the petitioner's mental illness is his own questionable testimony, this Court simply cannot conclude that the allegations of mental illness are proven. In light of that, there was nothing for the trial defense counsel to address, and his representation was certainly acceptable in that regard.
As previously noted, there is insufficient evidence by which this Court can conclude that any medications that the petitioner may have taken on the day of his plea would have adversely affected the voluntariness of his guilty plea.
Most importantly, however, Attorney Karpe did negotiate a favorable plea bargain for his client, "To satisfy the prejudice prong, the petitioner must show a `reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Baillargeon v. Commissioner of Correction, 67 Conn. App. 716
at 722 (2002). Here, despite the possibility of his being able to obtain an acquittal on the charge of larceny, the petitioner made the conscious decision to take the pragmatic approach of pleading guilty under theAlford doctrine in order to minimize his potential exposure and sentence. The petitioner made the voluntary decision to take that course rather than to insist upon a not guilty plea and a trial on the merits. "In determining the validity of a plea, `[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' North Carolina v.Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)." State v.Parker, 67 Conn. App. 351 at 354 (2001).
As regards the claims of the petitioner that Attorney Karpe should have withdrawn, the evidence does not support a finding of a conflict of interest. It is true that Attorney Karpe did not move for an examination under CGS § 54-56d even though his client wanted him to do so. This does not constitute a conflict of interest such that Attorney Karpe was CT Page 3174 required to withdraw.[2] There was no other person whose interests were adverse to the petitioner to whom Attorney Karpe owed a duty of loyalty. A lawyer is not bound to follow the orders of his client except in some limited circumstances such as the decision as to which plea to enter and the decision as to whether a criminal defendant will or will not testify. A lawyer is required to exercise professional judgment in his representation. Given a serious disagreement over the representation, a lawyer may seek to withdraw from representation[3] or a client may discharge his counsel, however, this does not constitute a conflict of interest.
Notwithstanding, however, it is clear that the petitioner did not suffer any prejudice as a result of this dispute. Even if the refusal to call for a competency examination were deemed to constitute deficient performance on the part of the trial defense counsel,[4] the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra, at 694. With the evidence of a mental illness being what it is most unlikely that the petitioner would have been found incompetent to stand trial. So, any failure to ask for an examination under CGS § 54-56d would not have changed the fact that the petitioner was facing an imminent trial on the charges. Given the fact that the petitioner made a voluntary and intelligent choice to plead guilty, this Court will deny the petition for habeas corpus.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
S.T. Fuger, Jr., Judge