STATE OF CONNECTICUT *v.* JOSEPH D. ASSUNTINO ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued February 1—decision released May 17, 1977

*Jerrold H. Barnett,* public defender, for the appellee (defendant Ronald Baia).

*Howard A. Jacobs,* for the appellees (named defendant et al.).

*Anthony J. Lasala,* for the appellee (defendant Edward Compo).

*Michael J. Flaminio,* for the appellee (defendant Nicholas V. Carrano).

*Austin J. McGuigan,* prosecuting attorney, for the appellant (state).

LOISELLE, J. The defendants were charged with professional gambling and with using a telephone facility to transmit or receive gambling information. The charges were dismissed by the Court of Common Pleas. The state claims that the dismissals were due to an erroneous interpretation of a statute, and that there is a division among the geographical areas of the Court of Common Pleas regarding the interpretation of this statute. At the present time the state has no right of appeal in a criminal case from the Court of Common Pleas to the Appellate

Session of the Superior Court. *State* v. *Falzone,* 171 Conn. 417, 370 A.2d 988. The state has not appealed but has brought a writ of error to this court. The defendants have moved to dismiss the writ, alleging that this court lacks jurisdiction to entertain a writ of error brought by the state from a judgment of the Court of Common Pleas in a criminal case.

It is true that there is no longer any statutory authority for such a writ. Section 52-272 of the General Statutes, which deals with writs of error, was amended in 1974 to eliminate mention of the Court of Common Pleas. Public Acts 1974, No. 74-183, § 96. Only writs of error from the Superior Court to the Supreme Court are now mentioned in that statute. Public Acts 1974, No. 74-183, was the act which implemented a broad plan of court reorganization, merging the former Circuit Court with the Court of Common Pleas, and establishing a procedure whereby most appeals from the judgments of the Court of Common Pleas would be taken to an Appellate Session of Superior Court. Public Acts 1974, No. 74-183, § 9; General Statutes § 51-265. The mere elimination of mention of the writ of error from Common Pleas in § 52-272, when the legislature in Public Acts 1974, No. 74-183, was principally concerned with unification of the Court of Common Pleas and the Circuit Court, is not persuasive that the legislature also intended to abolish the writ, thus effectively barring all review by this court at the state's instance. It is an established rule of statutory construction that statutes are not readily interpreted as abrogating common-law rights. *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85; *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 617, 153 A.2d 412.

A writ has been provided for by statute from the earliest days of independence. Statutes, 1784, p. 50. Our cases are divided, some describing the writ as purely statutory, others as grounded in the common law and merely recognized by statute. Compare *State* v. *Caplan,* 85 Conn. 618, 84 A. 280 (common-law practice recognized by statute); accord, *Lippitt* v. *Bidwell,* 87 Conn. 608, 89 A. 347; with *Green* v. *Hobby,* 8 Conn. 165, and *Humphrey* v. *Marshall,* 15 Conn. 341, 345 (both stating that jurisdiction of this court is confined to errors in judgments of the Superior Court); *Rogers* v. *Carroll,* 48 Conn. 300 (absent statutory authority, the Superior Court has no jurisdiction of writ from a city court); *Chipman* v. *Waterbury,* 59 Conn. 496, 22 A. 289 (writ requires statutory authorization); *Brown* v. *Cray,* 88 Conn. 141, 89 A. 1123 (our writ is statutory).

Faced with confusion in our own cases, we look back to the practice of England, while bearing in mind that English practice is not determinative unless adopted here. *State* v. *Muolo,* 118 Conn. 373, 377, 172 A. 875. In England the writ of error lay at common law to the King's Bench from the judgment of a county palatine, and from the King's Bench to parliament. 2 Tidd's Practice, p. 1059.

The first mention of a writ of error in the Connecticut colony is found in the records of the General Assembly, which then was the court of last resort as well as the legislative body, in 1719. Stating "the number of petitions brought to this Assembly, complaining of erroneous judgments in the courts of common pleas, hath been much increased . . . yet there hath not been any remedy otherwise provided in the law whereby errours from the superiour court or inferiour courts might be deter-

mined," an act was passed establishing for two years a procedure whereby ten commissioners should hear "all writs of errour from the final judgment of the superiour courts or inferiour courts." 6 Col. Rec. 150–51.

In 1723 the General Assembly acted on the "memorial" of one who complained that the writ of error he had brought from a judgment of an inferior court had been denied by the Superior Court because the other party was an inhabitant of New Jersey and service on that party's Connecticut attorney would not suffice. The assembly ordered that the writ be heard by the Superior Court, resolving "that a writ of error, being part of the process allowed and established by law in order to [sic] the regular administration of justice and to bring the action on which its brought to a just conclusion, lyes as well for an inhabitant against a stranger as for a stranger against an inhabitant," and that notice to the other party's attorney would suffice. 6 Col. Rec. 402.

Two more acts were passed in colonial times regulating the use of the writ, thereby recognizing its existence. In 1728, an act was passed stating "[t]hat for the future no writ of errour shall be bro't for the reversal of any judgment after the space of three years next after the giving of the judgment are expired; any law, usage or custom to the contrary notwithstanding." 7 Col. Rec. 185.

In 1738, the General Assembly passed "An Act for the better regulating Tryals on Writs of Error." Stating that "sundry debtors and other litigious persons, intending to delay and bring great cost upon them that have suits against them in the law, have taken out writs of error and prosecuted them from court to court; by which the action laid in the

original writ hath been long delayed or defeated," it provided for awarding costs to the defendant in error if the judgment was rendered in his favor. 8 Col. Rec. 193. This act was to have a life of only four years, but it was later renewed indefinitely. 8 Col. Rec. 578.

The early records of our courts also provide evidence of a common-law writ of error. In 1775, in the case of *Stuart* v. *Pierce,* 1 Root 75, it was held that a writ of error lay from the judgment of two justices to the Litchfield County Court. No statutory authority for this writ has been discovered.

After independence, the practice regarding writs of error was not rejected or drastically altered. Indeed, the acts passed in colonial times were merely incorporated in the legislation passed after independence. The Acts and Laws of the state of Connecticut of 1784 include an act dealing with writs of error which incorporated the provisions of 1728 and 1738, and for the first time expressly stated that "the Superior Court shall have jurisdiction of all Writs of Error, brought for reversal of any Judgment of the County Court, or any Inferior Court, or of an Assistant or Justice of the Peace, in civil or criminal Causes." Statutes, 1784, p. 50. See also id., p. 29.

Also in the Acts and Laws of 1784 was an act establishing a Supreme Court of Errors, composed of the lieutenant governor and the council, to "be the dernier resort of all Matters brought by way of Error, or Complaint from the Judgment or Decree of the Superior Court."[1] Id., p. 266. In 1806, the powers of that body were terminated and the same

---

[1] In 1793 the governor was made a member of the court. Acts and Laws of 1793, p. 455.

powers given instead to a body composed of five judges of the Superior Court. Statutes, 1808, p. 219, § 5. The court recognized the common-law character of the writ of error when in 1808 it adopted a rule abolishing the bill of exceptions, one of the common-law incidents of the writ, and authorizing instead a motion for a new trial. 3 Day 28.

It was not until 1818 that a constitution was enacted by Connecticut, providing for separation of powers among the legislative, executive and judicial branches, and making the Supreme Court of Errors a constitutional court. However, the common-law origin of the writ of error was recognized soon thereafter both by statute and by court decision. In the General Statutes, Revision of 1821, the first review of the statutes after the enactment of our constitution, p. 54, § 69, there is found a provision that "[w]rits of error may be brought to the superior court, from the judgments of the county and city courts, and of justices of the peace, for any error in the same, to be proceeded with *according to the course of the common law.*" (Emphasis added.) In 1825, in the case of *Wetmore* v. *Plant,* 5 Conn. 541, this court held that nothing which contradicts the record could be assigned as error in a writ of error, citing for that proposition a string of English cases.

It is clear that the common-law writ of error was adopted by Connecticut as part of its own common law. No statute has expressly abrogated that law. It is thus unnecessary for this court to consider whether the jurisdiction to hear such a writ is an essential attribute of the constitutional role of this court, as is argued by the state. And the state's right to bring a writ in a criminal case, where the

writ exists, has already been determined in *State v. Muolo,* 118 Conn. 373, 172 A. 875. The question remaining is whether the writ at common law lies to this court or to the Superior Court.

In the early days of this state, the jurisdiction of this court was confined by statute to errors in the judgments and decrees of the Superior Court. Statutes, 1808, p. 204, § 19; *Green v. Hobby,* 8 Conn. 165; *Humphrey v. Marshall,* 15 Conn. 341.[2] The writ of error lay by statute from judgments of county courts and justices of the peace to the Superior Court, and from the Superior Court to the Supreme Court. Statutes, 1821, p. 54, § 69; id., p. 174, § 113; id., p. 197, § 8.

In 1875, the statutory jurisdiction of the Supreme Court was expanded to include "all matters brought before it according to law." General Statutes, Rev. 1875, p. 45, § 2. At the same time, a statute was passed providing that the writ of error in matters of law only would lie from the Superior Court, the Court of Common Pleas and the county courts to the Supreme Court. General Statutes, Rev. 1875, p. 449, § 9. That statute remained essentially the same, save for the elimination of the county courts, until the 1974 amendment omitted the words "court of common pleas," as already discussed. Public Acts 1974, No. 74-183, § 96. The statutory jurisdiction of this court today still extends to "all matters brought before it according to law." General Statutes § 51-199.

Where there are no facts to be determined, to bring the writ to Superior Court is unnecessary, and

[2] This court did not then consider, nor need it now decide, whether its constitutional jurisdiction could be so limited by statute.

would be a needless additional step before a final decision. The writ has long lain to this court from Common Pleas in accordance with statutes which have been merely declaratory of the common law. It is therefore concluded that the writ, at common law, lies to this court from a judgment of the Court of Common Pleas.

The defendants claim that the constitutional ban on double jeopardy bars the bringing of the writ and that, as a matter of law, the state cannot prevail on the record. As the record is not now before this court, those questions are better decided when the merits of this writ are considered by this court with full briefs after oral arguments and on examination of the record.

The motion to dismiss is denied.

In this opinion the other judges concurred.