******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JUSTIN SKIPWITH
## (SC 19608)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa, Robinson and D'Auria, Js.*

*Syllabus*

Pursuant to the victim's rights amendment set forth in the state constitution (Conn. Const., amend. XXIX [b]), in a criminal prosecution, the victim has the right to make a statement to the court objecting to or supporting any plea agreement prior to the court's acceptance of that plea, and to make a statement to the court at sentencing.

The plaintiff in error, whose daughter had died as a result of the defendant's criminal conduct, filed a writ of error in this court, claiming that the trial court had improperly dismissed her motion to vacate the defendant's sentence. The plaintiff in error had not been afforded an opportunity to object to the plea agreement between the defendant and the defendant in error, the state's attorney for the judicial district of Waterbury, or to make a statement at the defendant's sentencing. After learning that the defendant had been sentenced, the plaintiff in error filed her motion to vacate the defendant's sentence on the ground that her rights under the victim's rights amendment had been violated. The trial court concluded that the defendant's sentence was not illegal and dismissed the motion for lack of jurisdiction. After this court transferred the writ of error to the Appellate Court, that court dismissed the writ of error, concluding that the rule of practice (§ 43-22) providing that a court may correct an illegal sentence or a sentence imposed in an illegal manner did not authorize the trial court to vacate the defendant's sentence. The Appellate Court reasoned that the plaintiff in error provided no authority supporting the proposition that the defendant's sentence was imposed in an illegal manner because it had violated of the victim's constitutional rights. On the granting of certification, the plaintiff in error appealed to this court, claiming that she was entitled to have the defendant's sentence vacated due to the fact that it was imposed in an illegal manner because she had not been afforded her rights under the victim's rights amendment. The defendant in error claimed, inter alia, that this court lacked jurisdiction over the writ of error because there was no express constitutional or statutory provision granting either this court or the Appellate Court jurisdiction over a writ of error seeking to enforce the victim's rights amendment. *Held* that this court had jurisdiction over the writ of error and had the authority to transfer it to the Appellate Court but upheld the Appellate Court's dismissal of the writ of error because it sought a form of relief that was barred by the victim's rights amendment: because a writ of error is a common-law remedy, the lack of any express constitutional or statutory authorization for a victim to file a writ of error from a ruling of the trial court implicating his or her rights under the victim's rights amendment did not affect this court's jurisdiction, as long as the victim fell within the class of persons entitled to file a writ of error and no constitutional or statutory provision deprived this court of jurisdiction; furthermore, the clauses in the victim's rights amendment providing that the legislature shall provide by law for its enforcement and that it shall not be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case did not deprive this court of jurisdiction, as the legislative history of the amendment indicated that the legislature contemplated that victims would be able to seek relief in the courts and that appellate courts would have a role in interpreting and implementing the amendment, and the bar on appellate relief did not deprive this court of jurisdiction but, rather, prohibited this court from granting any relief that would directly affect the judgment in a criminal case or otherwise abridge the substantive rights of a defendant; moreover, although the plaintiff in error had standing to file the writ of error to enforce her constitutional rights, because she sought a form of relief that was barred by the prohibition on appellate relief contained in the victim's rights amendment, specifically, an order requiring the trial court to vacate the defen-

dant's sentence, this court upheld the Appellate Court's dismissal of the writ of error on this alternative ground.

(One justice concurring separately)

Argued April 5—officially released August 15, 2017

*Procedural History*

Writ of error from the decision of the Superior Court in the judicial district of Waterbury, *Fasano, Js.*, dismissing the plaintiff in error's petition for a writ of error coram nobis and dismissing the plaintiff in error's motion to vacate the defendant's sentence, brought to this court, which transferred the matter to the Appellate Court, *Gruendel, Alvord* and *Mullins, Js.*; judgment dismissing the writ or error, from which the plaintiff in error, on the granting of certification, appealed to this court. *Affirmed.*

*Jeffrey D. Brownstein*, for the appellant (plaintiff in error Tabatha Cornell).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Jason Germain*, senior assistant state's attorney, for the appellee (defendant in error state's attorney for the judicial district of Waterbury).

*Opinion*

ROGERS, C. J. The question that we must answer in this certified appeal is whether a crime victim who has been deprived of her state constitutional rights to object to a plea agreement between the state and the defendant and to make a statement at the sentencing hearing is entitled to have the defendant's sentence vacated so that she may attend a new sentencing hearing and give a statement. The defendant, Justin Skipwith, was charged with, inter alia, manslaughter in the second degree with a motor vehicle after the vehicle that he was driving struck and killed Brianna Washington, the daughter of the plaintiff in error, Tabatha Cornell. Although the plaintiff in error notified the defendant in error, the state's attorney for the judicial district of Waterbury (state), that she was invoking her rights as a victim of the crime pursuant to article first, § 8, of the Connecticut constitution, as amended by articles seventeen and twenty-nine of the amendments,[1] she was not afforded an opportunity to object to the plea agreement between the defendant and the state or to make a statement at the defendant's sentencing hearing. Thereafter, the plaintiff in error filed a motion to vacate the sentence, which the trial court dismissed for lack of subject matter jurisdiction.[2] The plaintiff in error then filed a writ of error claiming that the trial court improperly dismissed her motion to vacate the defendant's sentence, naming the state as the defendant in error.[3] See *State* v. *Skipwith*, 159 Conn. App. 502, 503, 123 A.3d 104 (2015). The Appellate Court determined that the trial court had properly concluded that it lacked jurisdiction to entertain the motion to vacate and dismissed the writ of error. Id., 512. We then granted the plaintiff in error's petition for certification to appeal.[4] We affirm the judgment of the Appellate Court on the alternative ground that the writ of error must be dismissed on the merits[5] because it seeks a form of relief that is barred by the victim's rights amendment. Accordingly, we need not reach the question of whether the Appellate Court properly found that the trial court lacked jurisdiction to entertain the plaintiff in error's motion to vacate the defendant's sentence.

The undisputed facts of this case are set forth in the opinion of the Appellate Court; see id., 503–506; and need not be repeated here, as the state concedes that the plaintiff in error was denied her right under article first, § 8, as amended, to object to the plea and to give a statement at the defendant's sentencing. Conn. Const., amend. XXIX (b) (7) and (8). After learning that the defendant had been sentenced, the plaintiff in error filed a motion to vacate the sentence based on violations of the victim's rights amendment. The trial court conducted a hearing on the motion, at which the plaintiff in error and a family friend gave statements, and ultimately dismissed the motion for lack of jurisdiction on

the ground that the sentence was not illegal. Id., 505–506.

The plaintiff in error then filed this writ of error challenging the decision of the trial court. The Appellate Court concluded that the trial court properly had dismissed the motion to vacate the defendant's sentence, and then dismissed the writ of error on the merits. Id., 512. The Appellate Court reasoned that Practice Book § 43-22[6] authorizes the trial court to "correct a sentence imposed in an illegal manner," and the plaintiff in error had provided "no authority supporting the proposition that a defendant's sentence is imposed in an illegal manner . . . when the sentencing proceeding was conducted in violation of the *victim's* constitutional right to be present." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 510–12. In addition, the Appellate Court observed that victims have no statutory authority to seek to vacate a defendant's conviction. Id., 512. This certified appeal followed.

The plaintiff in error contends that, contrary to the Appellate Court's determination, because the defendant's sentence was imposed without affording her the right under article first, § 8, as amended, to give a statement at the defendant's sentencing, the sentence was "imposed in an illegal manner" for purposes of Practice Book § 43-22, and, therefore, she was entitled to have the sentence vacated. The state contends that the Appellate Court correctly determined that the trial court had properly dismissed the plaintiff in error's motion to vacate the defendant's sentence and further claims, essentially as an alternative ground for affirmance, that, in the absence of any express constitutional or statutory provision, both the Appellate Court and this court lack jurisdiction to entertain a writ of error seeking to enforce the provisions of the victim's rights amendment. We conclude that this court had jurisdiction over the writ of error and, consequently, we had the authority to transfer it to the Appellate Court.[7] We also conclude, however, that the writ of error must be dismissed on the merits because it seeks a form of relief that is barred by the victim's rights amendment.[8]

Because it implicates this court's appellate jurisdiction, we first address the state's claim that this court lacks authority to entertain a writ of error seeking to enforce the victim's rights amendment because neither the state constitution nor any statute expressly confers such authority. This is a question of law over which our review is plenary. See *Pritchard* v. *Pritchard*, 281 Conn. 262, 274–75, 914 A.2d 1025 (2007) (whether party "properly invoked the jurisdiction of the Appellate Court is a question of law subject to plenary review").

In support of its contention that this court lacks jurisdiction over a writ of error seeking to enforce the victim's rights amendment, the state relies primarily on this court's decision in *State* v. *Gault*, 304 Conn. 330,

39 A.3d 1105 (2012). In that case, the victim[9] appealed from an order of the trial court requiring that an affidavit supporting the arrest warrant for the defendant, which had been redacted to remove information that could identify the victim, be unsealed. Id., 335–36. She contended, among other things, that this order violated her right under article first, § 8, as amended, to be treated with fairness and respect throughout the criminal justice process. Id., 336; see also Conn. Const., amend. XXIX (b) (1). The state claimed on appeal that, because the victim was not a party to the criminal proceeding, she had no standing to appeal. *State* v. *Gault*, supra, 333, 337–38. This court agreed with the state. Id., 338. We observed in *Gault* that "except insofar as the constitution bestows upon this court jurisdiction to hear certain cases . . . the subject matter jurisdiction of . . . this court is governed by statute." (Internal quotation marks omitted.) Id., 339. We then noted that the victim's rights amendment did not contain a right to appeal from a ruling by the trial court implicating the rights created by that amendment. Id. We further noted that the statute authorizing appeals, General Statutes § 52-263, provided that the remedy of appeal was available only to parties to the case. Id., 342. Finally, we observed that, although Public Acts 1998, No. 98-231, § 2, as amended by Public Acts 2001, No. 01-211, § 12, codified at General Statutes § 46a-13c (5), authorized the Office of the Victim Advocate to "[f]ile a limited special appearance in any court proceeding for the purpose of advocating for any right guaranteed [by the victim's rights amendment or] the general statutes," the legislature did not intend that victims would have full party status or the right to appeal from rulings of the trial court. See *State* v. *Gault*, supra, 347. Accordingly, we concluded that victims were not parties with standing to appeal from an order in a criminal case, and we dismissed the victim's appeal. Id., 348.

In the present case, the state contends that *Gault* stands for the proposition that, because the victim's rights amendment contains no self-executing remedial procedures; see id., 340–41; if the legislature has not expressly provided a remedy by which the rights protected by that constitutional provision may be vindicated, no such remedy exists.[10] Our decision in *Gault*, however, was premised on the principle that the right of *appeal* is created purely by statute. See id., 339. Because no statute provides victims with a right to appeal from rulings of the trial court, no such right exists. In contrast, a writ of error is a common-law remedy. See, e.g., *State* v. *McCahill*, 261 Conn. 492, 499–500, 811 A.2d 667 (2002) ("[t]he writ of error . . . is a concept deeply rooted in our common law" and "the right to bring a writ of error . . . exists independent of [any] statutory authorization" [citations omitted; footnote omitted; internal quotation marks omitted]); *State* v. *Assuntino*, 173 Conn. 104, 112, 376 A.2d 1091 (1977)

("The writ [of error] has long lain to this court . . . in accordance with statutes which have been merely declaratory of the common law. It is therefore concluded that the writ, at common law, lies to this court . . . ."); *State* v. *Caplan,* 85 Conn. 618, 622, 84 A. 280 (1912) ("[t]he writ of error is the common-law method . . . of carrying up a cause from an inferior to a higher court for the revision of questions of law"). Thus, unlike in *Gault,* the lack of any express constitutional or statutory authorization for a victim to file a writ of error from a ruling of the trial court implicating his or her rights under the victim's rights amendment does not affect the victim's right to file a writ of error or this court's jurisdiction to entertain it. Rather, in the absence of any constitutional provision or statute *depriving* this court of its common-law jurisdiction over writs of error,[11] this court has jurisdiction if a victim falls within the class of persons who are entitled to file a writ of error.

The state has not claimed that any statute deprives this court of its jurisdiction over writs of error seeking relief for a violation of the victim's rights amendment, and we conclude that nothing in the state constitution does so. Article first, § 8, as amended, provides in relevant part: "The general assembly shall provide by law for the enforcement of this subsection. Nothing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case." Conn. Const., amend. XXIX (b). With respect to the first quoted sentence, that provision merely authorizes the legislature to enforce through legislation the rights created by the constitutional provision. It does not abrogate the basic constitutional obligation of courts to interpret and implement constitutional provisions.[12] See *Marbury* v. *Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803) ("[i]t is emphatically the province and duty of the judicial department to say what the law is"). Indeed, to the extent that there is any ambiguity as to whether the constitutional provision deprives courts of their authority to adjudicate claims arising from the victim's rights amendment, the legislative history reveals that the legislature expressly contemplated that victims would be able to seek relief both in the trial court and in the appellate courts.[13]

The second quoted sentence, providing that the victim's rights amendment shall not be "construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case"; Conn. Const., amend. XXIX (b); also does not deprive the appellate courts entirely of their authority to interpret and implement the constitutional provision. First, as we have indicated, the legislative history of the provision clearly indicates that the legislature contemplated that both the trial courts and the appellate courts would have a

role in interpreting and implementing it. See footnote 13 of this opinion. Second, in ordinary usage, the phrase "appellate relief" connotes relief granted on appeal from a *judgment* disposing of the case, not relief provided to a nonparty in connection with a collateral issue that will not directly affect the substantive issues or the ultimate disposition of the case. See *State* v. *Moore*, 158 Conn. 461, 463, 262 A.2d 166 (1969) ("[a]n appeal lies only from a final judgment, and there can be no judgment in a criminal case until sentence is pronounced"). Indeed, the legislative history indicates that the purpose of the provision barring "appellate relief" was to ensure that any relief provided would not deprive defendants of their existing substantive rights; its purpose was not to deprive victims of any appellate redress for a violation of their rights, even when providing relief would not affect the judgment or the rights of the defendant.[14] Third, we can perceive no reason why, before the victim's rights amendment was adopted, a victim could not have obtained relief by filing a writ of error in this court to vindicate rights conferred by chapter 968 of the General Statutes governing victim services, including the right to present a statement to the prosecutor and the trial court prior to the acceptance of a plea and the right to submit a statement to the prosecutor before sentencing.[15] See General Statutes § 54-203 (b) (7) (B) and (C). There is no evidence, and it would be anomalous to conclude, that the victim's rights amendment was intended to *eliminate* preexisting mechanisms for obtaining such relief from this court. Rather, it is reasonable to conclude that the bar on appellate relief was intended to be the constitutional equivalent to General Statutes § 54-223, which provides that the "[f]ailure to afford the victim of a crime any of the rights provided pursuant to any provision of the general statutes shall not constitute grounds for vacating an otherwise lawful conviction or voiding an otherwise lawful sentence or parole determination."[16]

We conclude, therefore, that the bar on appellate relief set forth in article first, § 8, as amended, merely prohibits this court from granting any relief that would directly affect the judgment in a criminal case or otherwise abridge the substantive rights of a defendant.[17] Accordingly, we conclude that this provision does not deprive this court of its jurisdiction over writs of error arising from the victim's rights amendment.

With this background in mind, we must address an issue that we left unresolved in our decision in *Gault.* Specifically, we stated in that case that it was unclear whether the prohibition on appellate relief contained in article first, § 8, as amended, "is intended to apply to victims or only to criminal defendants." *State* v. *Gault*, supra, 304 Conn. 339–40 n.12. Our conclusion here that the prohibition on appellate relief was intended to bar any form of relief that would directly affect the judgment or abridge the defendant's rights makes it clear,

however, that the focus of the prohibition is on the *substance* of the relief, not on the identity of the party seeking the relief. Accordingly, we now conclude that the prohibition was intended to apply to any person seeking a prohibited form of relief, including victims. Similarly, because the prohibition goes to the substance of the relief sought, and not to the vehicle by which the relief is sought, we conclude that, to the extent that there is any doubt as to whether a writ of error is technically a form of appellate relief in this context, the constitutional prohibition imposes the same limitations on writs of error that it would impose on appeals by victims, if they were statutorily authorized. See *State* v. *Caplan*, supra, 85 Conn. 622; see also *State* v. *Salmon*, 250 Conn. 147, 153–54, 735 A.2d 333 (1999) (writ of error is proper vehicle for appellate review when party is unable to appeal).

Thus, what our analysis also makes clear is that, although the plaintiff in error has standing to file the writ of error,[18] she seeks a form of relief—an order requiring the trial court to vacate the defendant's sentence—that is barred by the prohibition on appellate relief contained in the victim's rights amendment. Although the victim's rights amendment does not deprive victims of their right to file a writ of error to enforce their constitutional rights, it also does not expand their rights to seek a form of appellate relief that previously had been barred by statute. Because victims were barred by § 54-223 from seeking to vacate a criminal sentence for the violation of their rights when the victim's rights amendment was adopted; see footnote 16 of this opinion;[19] we conclude that this form of relief is barred, and, therefore, we affirm the judgment of the Appellate Court on this alternative ground.[20]

The judgment of the Appellate Court is affirmed.

In this opinion PALMER, EVELEIGH, ESPINOSA, ROBINSON and D'AURIA, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers, and Justices Palmer, Eveleigh, McDonald, Espinosa, Robinson and D'Auria. Although Justice Espinosa was not present when the case was argued before the court, she has read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision. The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] Article first, § 8, of the constitution of Connecticut, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "In all criminal prosecutions, a victim, as the general assembly may define by law, shall have the following rights: (1) The right to be treated with fairness and respect throughout the criminal justice process; (2) the right to timely disposition of the case following arrest of the accused, provided no right of the accused is abridged; (3) the right to be reasonably protected from the accused throughout the criminal justice process; (4) the right to notification of court proceedings; (5) the right to attend the trial and all other court proceedings the accused has the right to attend, unless such person is to testify and the court determines that such person's testimony would be materially affected if such person hears other testimony; (6) the right to communicate with the prosecution; (7) the right to object to or support any plea agreement entered into by the accused and the prosecution and to make a statement to the court prior to the acceptance by the court of the plea of guilty or nolo contendere by the accused; (8)

the right to make a statement to the court at sentencing; (9) the right to restitution which shall be enforceable in the same manner as any other cause of action or as otherwise provided by law; and (10) the right to information about the arrest, conviction, sentence, imprisonment and release of the accused. The general assembly shall provide by law for the enforcement of this subsection. Nothing in this subsection or in any law enacted pursuant to this subsection shall be construed as creating a basis for vacating a conviction or ground for appellate relief in any criminal case." Hereinafter, we refer to this provision as article first, § 8, as amended, or the victim's rights amendment.

[2] In addition, the plaintiff in error filed a petition for a writ of error coram nobis, which the trial court also dismissed. The Appellate Court concluded that the trial court properly dismissed that petition; see *State* v. *Skipwith*, 159 Conn. App. 502, 512, 123 A.3d 104 (2015); and that ruling is not at issue in this certified appeal.

[3] The plaintiff in error filed the writ of error in this court, and we transferred it to the Appellate Court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] We granted the petition for certification to appeal on the following issue: "Did the Appellate Court properly determine that the trial court properly dismissed the plaintiff in error's motion to vacate the defendant's sentence because it was not an illegal sentence?" *State* v. *Skipwith*, 320 Conn. 911, 128 A.3d 955 (2015). Upon review of the record and the claims raised before the Appellate Court, we now conclude that the certified question is not an adequate statement of the issue properly before this court. Accordingly, we reformulate the certified question as follows: "Could the Appellate Court grant the relief requested by the plaintiff in error? If so, did the Appellate Court properly determine that the trial court properly dismissed the plaintiff in error's motion to vacate the defendant's sentence because it was not an illegal sentence?" See *State* v. *Ouellette*, 295 Conn. 173, 183–84, 989 A.2d 1048 (2010) (court may reformulate certified question to conform to issue actually presented and to be decided on appeal).

[5] For some time, this court and the Appellate Court have dismissed writs of error that lack merit. See, e.g., *Hardy* v. *Superior Court*, 305 Conn. 824, 827, 48 A.3d 640 (2012); *State* v. *Ross*, 272 Conn. 577, 613, 863 A.2d 654 (2005); *Ullmann* v. *State*, 230 Conn. 698, 724, 647 A.2d 324 (1994); *Sowell* v. *DiCara*, 161 Conn. App. 102, 122, 133, 127 A.3d 356, cert. denied, 320 Conn. 909, 128 A.3d 953 (2015); *State* v. *Peay*, 111 Conn. App. 427, 428, 959 A.2d 655 (2008), cert. denied, 291 Conn. 915, 970 A.2d 729 (2009); *Daniels* v. *Alander*, 75 Conn. App. 864, 883, 818 A.2d 106 (2003), aff'd, 268 Conn. 320, 844 A.2d 182 (2004). For purposes of clarity, in this opinion we use the phrase dismissed on the merits to distinguish that disposition from one where the writ of error is dismissed on a jurisdictional ground.

[6] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[7] See footnote 3 of this opinion.

[8] We therefore need not resolve the question of whether the defendant's sentence otherwise was imposed in an illegal manner for purposes of Practice Book § 43-22. Even if we were to assume that it was, we conclude that the victim's rights amendment prohibits the form of relief that the plaintiff in error is seeking, namely, an order requiring the trial court to vacate the defendant's sentence.

[9] The victim in *Gault* was not identified in order to protect her privacy. See *State* v. *Gault*, supra, 304 Conn. 333.

[10] We emphasize that this court did not hold in *Gault* that the provisions of article first, § 8, as amended, expressly conferring rights on victims, are not self-executing in the sense that they are not effective until the legislature passes implementing legislation. See *State* v. *Gault*, supra, 304 Conn. 340 (constitutional provisions that are not self-executing are not effective until implementing legislation is passed). We held only that the victim's rights amendment contains no self-executing provision conferring on victims the right to appeal from rulings in a criminal case. Id., 341, 347. Indeed, the state in the present case does not dispute that prosecutors and trial courts have regularly afforded victims their rights under the victim's rights amendment, including those that have not been expressly implemented by statute. The state has also consistently and forthrightly conceded that the failure to afford the plaintiff in error her rights in the present case was a rare and unfortunate exception to that general practice and *violated the plaintiff in*

*error's state constitutional rights*, despite the fact that those rights are not the subject of any implementing legislation. The state claims only that the state constitution contains no self-executing provisions providing a *judicial remedy* for such violations. Thus, properly understood, the state's contention is not that the victim's rights amendment is not self-executing in its entirety; rather, its contention is that claims that the self-executing provisions of the amendment have been violated are nonjusticiable. See *Vieth* v. *Jubelirer*, 541 U.S. 267, 277, 124 S. Ct. 1769, 158 L. Ed. 2d 546 (2004) (claim of unlawfulness is nonjusticiable when it "involves no judicially enforceable rights"). We conclude that such claims are justiciable, but that the scope of the relief that the courts can provide is limited.

[11] We express no opinion here as to whether such a statute would pass muster under the state constitution. See *Banks* v. *Thomas*, 241 Conn. 569, 585 n.16, 698 A.2d 268 (1997) (because court rejected claim that statute had limited court's jurisdiction over writs of error, court was not required to "determine whether such a bar would be a constitutionally impermissible encroachment upon this court's authority to entertain a writ of error"); *State* v. *Assuntino*, supra, 173 Conn. 110 (because legislature had not attempted to abrogate common-law writ of error by statute, it was "unnecessary for this court to consider whether the jurisdiction to hear such a writ is an essential attribute of the constitutional role of this court"); see also *Moore* v. *Ganim*, 233 Conn. 557, 573, 660 A.2d 742 (1995) ("article first, § 10, [of the Connecticut constitution] prohibits the legislature from abolishing or significantly limiting common law and certain statutory rights that were redressable in court as of 1818" [footnote omitted]).

[12] In this regard, we note that § 5 of the fourteenth amendment to the United States constitution, providing that "[t]he Congress shall have power to enforce, by appropriate legislation, the provisions of this article," has never been construed to deprive the courts of their authority to interpret and implement that amendment.

[13] See 39 H.R. Proc., Pt. 9, 1996 Sess., p. 2833, remarks of Representative Ellen Scalettar (proposed constitutional amendment "really gives the courts the ability to be the primary interpreter of what the obligations of the state are, and in certain ways we are giving up our power to do that and giving it to the courts"); id., p. 2837, remarks of Representative Michael P. Lawlor (explaining that remedy for victim who was deprived of right created by proposed amendment "would be for an appellate court or a trial court to decide what the state's obligation is under the terms of the constitutional amendment"); id., p. 2872, remarks of Representative Dale W. Radcliffe ("[i]t is naturally left to a court to interpret sections of a constitution"); id., p. 2873, remarks of Representative Marie L. Kirkley-Bey ("we're passing a piece of paper onto a judicial system that can therefore incorporate and determine the law").

[14] See 39 S. Proc., Pt. 6, 1996 Sess., p. 1991, remarks of Senator Martin M. Looney (rights created by proposed amendment "directly conflict with those of the defendant and fashioning a remedy for one without affecting the rights of the other would be extremely difficult"); 39 S. Proc., Pt. 10, 1996 Sess., p. 3247, remarks of Senator Thomas F. Upson (clarifying that purpose of provision prohibiting vacation of conviction and barring appellate relief was to ensure that no right of defendant was abridged); 39 H.R. Proc., Pt. 9, 1996 Sess., p. 2817, remarks of Representative Michael P. Lawlor (proposed amendment "is not intended to deprive any person of any liberty right that they have under the federal or state constitution"); 39 H.R. Proc., Pt. 9, 1996 Sess., p. 2840, remarks of Representative Michael P. Lawlor (proposed amendment "doesn't deprive any liberty or due process rights of any person who is a citizen of the state who might be accused of a crime").

[15] General Statutes § 54-224 provides that the state and its agents cannot be held liable for damages for the failure to afford a victim any rights protected by the General Statutes. That statute does not bar victims, however, from seeking to enforce their rights.

[16] Indeed, the legislative history of the victim's rights amendment indicates that the intent of the amendment was to give constitutional status to the statutory rights that victims already had. See 39 H.R. Proc., Pt. 9, 1996 Sess., p. 2817, remarks of Representative Michael P. Lawlor ("[the amendment] only provides rights to victims of crime as they're defined in our statute[s]"); id., p. 2830, remarks of Representative Michael P. Lawlor ("everything in the amendment is something that's already law in the state of Connecticut"). Section 54-223 was enacted in 1986, ten years before the victim's rights amendment was adopted. See 1986 Public Acts, No. 86-401, §§ 3, 7.

[17] We recognize that this conclusion severely limits the relief that is avail-

able to victims for violations of their constitutional rights. Because it is not clear, however, that the bar on appellate relief that would affect the judgment or abridge a defendant's rights effectively bars *all* appellate relief, we cannot conclude at this juncture that it deprives this court of jurisdiction over writs of error arising from the victim's rights amendment. Accordingly, we leave it for another day to resolve the question of whether, if a trial court failed to comply with the provisions of article first, § 8, as amended, the victim could file an interlocutory writ of error before the plea was entered or the defendant was sentenced, seeking an order requiring the trial court to comply, provided that the victim could establish that the criteria for an appealable interlocutory order under *State* v. *Curcio* 191 Conn. 27, 31, 463 A.2d 566 (1983), were met and that granting relief would not abridge any of the defendant's existing rights, including the right to a speedy trial. See, e.g., *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 755–56, 48 A.3d 16 (2012) (this court had jurisdiction over writ of error challenging interlocutory discovery order that satisfied criteria for appealable final judgment under *Curcio*).

[18] The common-law requirements for standing to file a writ of error are now codified in Practice Book § 72-1 (a). See *State* v. *Rupar*, 293 Conn. 489, 501–502, 978 A.2d 502 (2009) (concluding that plaintiff in error who had satisfied requirements of § 72-1 had standing to file writ of error). Section 72-1 provides in relevant part: "(a) Writs of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court in the following cases: (1) a decision binding on an aggrieved nonparty . . . and (4) as otherwise necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law.

"(b) No writ of error may be brought in any civil or criminal proceeding for the correction of any error where (1) the error might have been reviewed by process of appeal, or by way of certification, or (2) the parties, by failure timely to seek a transfer or otherwise, have consented to have the case determined by a court or tribunal from whose judgment there is no right of appeal or opportunity for certification."

The plaintiff in error in the present case meets these requirements because she has raised a pure question of law from a final judgment of the Superior Court that is binding on her and by which she is aggrieved, namely, the ruling of the trial court dismissing her motion to vacate the defendant's sentence. In addition, under *State* v. *Gault*, supra, 304 Conn. 347, she has no right to appeal from that decision, and she did not consent to have the issue finally decided by the trial court.

[19] See also 39 H. R. Proc., Pt. 9, 1996 Sess., p. 2819, remarks of Representative Michael P. Lawlor ("[i]t is certainly not the intent [of the proposed amendment] to provide a veto power to a victim of a crime").

[20] But see *Kenna* v. *United States District Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (when trial court denied victim his right to give statement at defendant's sentencing hearing and victim filed writ of mandamus as authorized by federal law, reviewing court concluded that trial court "must avoid upsetting constitutionally protected rights, but it must also be cognizant that the only way to give effect to [the victim's] right to speak . . . is to vacate the sentence and hold a new sentencing hearing"); *State* v. *Barrett*, 350 Or. 390, 406–407, 255 P.3d 472 (2011) (when victim was denied right to be heard at defendant's sentencing and appealed as authorized by statute from trial court's ruling that there was no remedy for violation, reviewing court concluded that vacating defendant's sentence and conducting new sentencing hearing at which defendant could receive harsher sentence did not violate defendant's double jeopardy rights); *State* v. *Casey*, 44 P.3d 756, 765–66 (Utah 2002) (when victim was denied right to make statement at plea hearing, trial court properly determined that remedy was to " 'informally' " reopen the plea hearing at sentencing and accept testimony from victim). These cases, however, are distinguishable from the present case. Neither *Kenna* nor *Barrett* involved constitutional provisions barring appellate relief that would affect the judgment. The constitutional provision at issue in *Casey* barred "relief from any criminal judgment"; see *State* v. *Casey*, supra, 761 n.5; but relief was granted in that case before the defendant was sentenced. Because we conclude in the present case that an order vacating the defendant's sentence would affect the judgment in violation of the state constitutional prohibition on appellate relief, we need not determine whether doing so would violate the defendant's double jeopardy or other substantive rights.